UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|   |   |
|---|---|
| **Faculty, Alumni, and Students Opposed to Racial Preferences**,<br><br>Plaintiff,<br><br>v.<br><br>**Harvard Law Review**; **Harvard Law School**; **President and Fellows of Harvard College**; **Betsy DeVos**, in her official capacity as U.S. Secretary of Education,<br><br>Defendants. | Case No. 1:18-cv-12105 |

## COMPLAINT

Federal law prohibits universities that accept federal funds from discriminating on account of race or sex. *See* 42 U.S.C. § 2000d (Title VI); 20 U.S.C. § 1681 (Title IX). The Harvard Law Review is flouting these requirements by using race and sex preferences to select its members—a practice that violates the clear and unequivocal language of Title VI and Title IX. The Harvard Law Review is also engaging in illegal race and sex discrimination when selecting articles for publication, by giving preference to articles written by women or racial minorities. The plaintiff brings suit to enjoin these discriminatory practices, and to ensure that all components of Harvard University comply with their obligations under federal anti-discrimination law.

## JURISDICTION AND VENUE

1.  The Court has subject-matter jurisdiction under 28 U.S.C. § 1331 and 28 U.S.C. § 1343.

2.  Venue is proper because a substantial part of the events giving rise to the claims occurred in this judicial district. *See* 28 U.S.C. § 1391(b)(2).

## PARTIES

3. Plaintiff Faculty, Alumni, and Students Opposed to Racial Preferences (FASORP) is an unincorporated nonprofit membership association organized under the laws of Texas. Its website is at http://www.fasorp.org.

4. The President and Fellows of Harvard College is the legal name of Harvard University. It can be served at its Office of the General Counsel, located at Smith Campus Center, Suite 980, 1350 Massachusetts Avenue, Cambridge, Massachusetts 02138-3834. For simplicity and ease of exposition, we will refer to this defendant as Harvard University in our court filings.

5. Defendant Harvard Law School is located at 1563 Massachusetts Avenue, Cambridge, Massachusetts 02138.

6. Defendant Harvard Law Review is located at Gannett House, 1511 Massachusetts Avenue, Cambridge, MA 02138.

7. Defendant Betsy DeVos is the U.S. Secretary of Education. Her office is located at 400 Maryland Avenue, SW, Washington, D.C. 20202. She is sued in her official capacity.

## FACTS

8. The Harvard Law Review is an academic journal edited and operated by students at Harvard Law School. The students select and edit the articles that the Law Review will publish, and they select the students who serve as members and editors of the Law Review.

9. Until recently, membership on the Law Review was an academic honor reserved to students who were selected on account of their first-year grades and their performance on a writing competition.

10. In recent years, however, the Harvard Law Review has been using race and sex preferences to select its members.

11. The Harvard Law Review's use of racial preferences started before 1995. *See* Lisa Anderson, *Law Review Masks Diversity in a New Admission System*, New York Times A17 (July 7, 1995), available at https://nyti.ms/297Of5K (last visited on October 6, 2018) ("Nine of the nation's top 20 law school reviews, including those at Cornell, Harvard, New York University and the University of Virginia, have affirmative action policies or diversity plans") (attached as Exhibit 2).

12. The Harvard Law Review started using sex preferences to select its members in 2013. *See* Dev A. Patel, *Harvard Law Review Expands Affirmative Action*, Harvard Crimson (February 21, 2013), available at https://bit.ly/2NL8kRH (last visited on October 6, 2018) ("The Harvard Law Review, which has historically been staffed by disproportionately more men than women, has expanded its affirmative action policy to include gender as a criteria in its editor selection process.") (attached as Exhibit 3).

13. The Harvard Law Review explains its membership-selection policies on its website. *See* https://harvardlawreview.org/about (last visited on October 6, 2018) (attached as Exhibit 1).

14. The Harvard Law Review selects 48 new editors each year from the rising 2L class. *Id*. The Law Review extends membership offers to 20 students based solely on their performance on a writing competition. *Id*. Another seven students, one from each first-year section, are chosen based on an "equally weighted combination of [writing] competition scores and 1L grades." *Id*. Three more students are chosen based on this same equally weighted combination of 1L grades and writing-competition scores, but without regard to section. *Id*.

15. After these 30 students are selected on the basis of merit, the remaining 18 students are selected "through a holistic but anonymous review that takes into account all available information." *Id*. The Law Review's website is cagey on exactly how this "holistic" evaluation is conducted, but it provides assurances that it "remains strongly committed to a diverse and inclusive membership." *Id*.

16. To facilitate its "holistic" evaluations, the Law Review invites all applicants to "make aspects of their identity available through the *Law Review*'s holistic consideration process," and promises that they "will have the opportunity to indicate their racial or ethnic identity, physical disability status, gender identity, sexual orientation, and socioeconomic status." *Id.* It also offers "the option of submitting an expository statement of no more than 150 words that identifies and describes aspects of their background not fully captured by the categories provided on the form." *Id.*

17. The Harvard Law Review uses these "holistic" evaluations, identity forms, and "expository statements" to give preferential treatment to women, "underrepresented" racial minorities, homosexuals, and transgendered people when selecting its members and editors.

18. The Harvard Law Review also discriminates on account of race and sex when selecting articles for publication, by giving preferential treatment to articles written by women or racial minorities.

19. Harvard Law School has established a "Policy on Discrimination," which declares that "[i]t is unlawful, and a violation of HLS rules, for any HLS student organization to discriminate in violation of the Law School's Non Discriminatory Policy." *See* https://bit.ly/2LqcXUv (last visited on October 6, 2018) (attached as Exhibit 4).

20. Harvard Law School's Non-Discrimination Policy, in turn, provides that:

> Harvard Law School does not discriminate against any person on the basis of race, color, religion, creed, national or ethnic origin, age, sex, gender identity, sexual orientation, marital or parental status, disability, source of income, or status as a veteran in admission to, access to, treatment in, or employment in its programs and activities. The Law School has instituted these policies and certain procedures to ensure a safe and non-discriminatory environment and to meet legal requirements, including Title IX of the Education Amendments of 1972. All employers using the facilities and services of the career services offices must comply

> with these policies and procedures. Harvard Law School makes one exception to this policy. Under threat of loss of funding to the University resulting from the Solomon Amendment, the Law School has suspended the application of its non-discrimination policy to military recruiters. This exception to our policy does not in any way reflect acceptance of, or agreement with, discriminatory hiring practices.

*See* https://bit.ly/2LlJ9YU (last visited on October 6, 2018) (attached as Exhibit 5).

21. Harvard Law School is not enforcing its Non-Discrimination Policy against the Harvard Law Review, even though it claims to require all HLS student organizations to comply with it. Instead, Harvard Law School and Harvard University have allowed these discriminatory membership-selection and article-selection practices to continue—even though they violate the clear and unambiguous text of Title VI and Title IX, as well as the Law School's own non-discrimination policy.

## STANDING

22. FASORP has associational standing to challenge the Harvard Law Review's use of race and sex preferences.

23. To establish associational standing, an entity must show that: "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Washington State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977).

24. Members of FASORP would have standing to challenge the defendants' violations of Title VI and Title IX if they sued as individuals.

25. Faculty members of FASORP who submit articles to the Harvard Law Review are being subjected to race and sex discrimination because the Harvard Law Review gives preference to articles written by women and racial minorities at the expense of articles written by FASORP members who are white or male. This discriminatory treatment inflicts "injury in fact." *See Ne. Fla. Chapter of Associated Gen. Contractors*

*of Am. v. City of Jacksonville*, 508 U.S. 656, 666 (1993). The injury is caused by the Harvard Law Review's discriminatory article-selection practices, and that injury will be redressed by an injunction that bars the Harvard Law Review from considering the race or sex of an author when selecting articles for publication.

26. Members of FASORP who submit articles to the Harvard Law Review suffer a separate and distinct "injury in fact" from the journal's membership-selection policies. Because the Harvard Law Review has subordinated academic merit to diversity considerations when selecting its members and editors, the articles that FASORP members submit to the Law Review are judged by less capable students—and these are the students who will ultimately make the career-altering decision of whether a professor's article gets accepted for publication or rejected. This inflicts "injury in fact." This injury is caused by the Harvard Law Review's use of race and sex preferences, and it will be redressed by an injunction that bars the Harvard Law Review from considering race or sex when selecting its members and editors.

27. There is a yet another "injury in fact" inflicted on FASORP members who submit articles to the Harvard Law Review: Those who have their articles accepted by the journal must submit to a student-run editing process, and the Law Review's use of race and sex preferences dilutes the quality of the students who edit an author's manuscript. This "injury in fact" is caused by the Harvard Law Review's use of race and sex preferences, and it will be redressed by an injunction that bars the Harvard Law Review from considering race or sex when selecting its members and editors.

28. Members of FASORP who are alumni of the Harvard Law Review suffer "injury in fact" from race and sex preferences that diminish the prestige of the law-review credential. *See, e.g.*, Richard A. Posner, *Overcoming Law* 77 (1995) ("The *Harvard Law Review*, with its epicycles of affirmative action, is on the way to becoming a laughingstock."). Law-review membership is supposed to be an academic honor—and it was always regarded as such until journals started using race and sex

preferences to select their members. Now law-review membership at Harvard is part of a politicized spoils system and no longer acts as a reliable signaling device for academic ability or achievement. This "injury in fact" is caused by the Harvard Law Review's use of race and sex preferences, and it will be redressed by an injunction that bars the Harvard Law Review from considering race or sex when selecting its members and editors.

29. Members of FASORP who are female or minority alumni of the Harvard Law Review suffer an additional "injury in fact" because their law-review membership is now viewed with suspicion—and it is difficult or impossible for them to prove that they earned their law-review membership because of academic merit rather than the Law Review's diversity set-asides. *See* Dev A. Patel, *Number of Female Harvard Law Review Editors Nearly Doubled in First Gender-Based Affirmative Action Cycle*, Harvard Crimson (October 7, 2013), available at https://bit.ly/2mQiBR2 (last visited on October 6, 2018) (acknowledging that "it is unclear whether the increase in female editors is due to the new affirmative action policy or if more women were selected by chance using the gender-blind processes.") (attached as Exhibit 6). This "injury in fact" is caused by the Harvard Law Review's use of race and sex preferences, and it will be redressed by an injunction that bars the Harvard Law Review from considering race or sex when selecting its members and editors.

30. Members of FASORP who are current students at Harvard Law School will be denied an equal opportunity to compete for membership on the Law Review on account of their race, sex, sexual orientation, or gender identity. This discriminatory treatment inflicts "injury in fact." *See Ne. Fla. Chapter*, 508 U.S. at 666. This injury is caused by the Harvard Law Review's use of race and sex preferences, and it will be redressed by an injunction that bars the Harvard Law Review from considering race or sex when selecting its members and editors.

31. Members of FASORP who are female or minority students at Harvard Law School—and who would have earned their way on to Law Review without help from the Diversity Committee—will suffer "injury in fact" because their law-review membership will be tainted by the journal's diversity set-asides. This injury is caused by the Harvard Law Review's use of race and sex preferences, and it will be redressed by an injunction that bars the Harvard Law Review from considering race or sex when selecting its members and editors.

32. The interests that FASORP seeks to protect in the litigation are germane to the organization's purpose. As its name suggests, FASORP seeks to restore meritocracy at American universities by eliminating the use of race and sex preferences.

33. Neither the claims asserted by FASORP nor the relief requested in this litigation requires the participation of individual FASORP members.

## STATEMENT OF CLAIMS

34. The Harvard Law Review is violating Title VI and Title IX by using race and sex preferences when selecting its members, editors, and articles.

35. Harvard Law School and Harvard University are violating Title VI and Title IX by allowing the Harvard Law Review to use race and sex preferences when selecting its members, editors, and articles—in direct contravention of the Law School's supposed non-discrimination policy.

36. Secretary DeVos is violating Title VI and Title IX by allowing Harvard University to receive federal funding while the Harvard Law Review, Harvard Law School, and Harvard University discriminate on account of race and sex.

37. The plaintiff brings suit under Title VI, Title IX, the Administrative Procedure Act, and any other law that might supply a cause of action for the requested relief.

**DEMAND FOR RELIEF**

38. The plaintiff respectfully requests that the court:

   a. declare that the Harvard Law Review's membership-selection and article-selection policies violate Title VI and Title IX;

   b. permanently enjoin the Harvard Law Review from considering race, sex, sexual orientation, or gender identity when selecting its members, editors, or articles;

   c. permanently enjoin the Harvard Law Review from soliciting information about an applicant's or author's race, sex, sexual orientation, or gender identity;

   d. order the Harvard Law Review to establish a new membership-selection policy that is based entirely on academic merit and that explicitly disavows any consideration of race, sex, sexual orientation, or gender identity or expression, and to submit that revised membership-selection policy to this Court and to the Secretary of Education for their review and approval within 30 days of this Court's judgment;

   e. permanently enjoin the Harvard Law Review from selecting any new members or editors without first securing preclearance from this Court and from the Secretary of Education, each of whom must certify that the Law Review's selection of those new members and editors was based on academic merit and was not in any way affected or influenced by race, sex, sexual orientation, or gender identity;

   f. order the Harvard Law Review to establish a new article-selection policy that explicitly forbids any consideration of an author's race, sex, sexual orientation, or gender identity or expression, and to establish a new article-selection process that conceals the author's name, sex, race, sexual orientation, gender identity or expression, and all other

        information that could be used to identify the author before the article is selected for publication, and order the Harvard Law Review to submit its new article-selection process to this Court and to the Secretary of Education for their review and approval within 30 days of this Court's judgment;

g.    order the Secretary of Education to terminate federal funding to all components of Harvard University until the Harvard Law Review renounces its use of race and sex preferences when selecting its members, editors, and articles;

h.    award similar relief if discovery reveals that Harvard University or Harvard Law School is using race or sex preferences in other matters such as faculty hiring or student admissions;

i.    award costs and attorneys' fees;

j.    grant all other relief that the Court deems just, proper, or equitable.

                                                Respectfully submitted.

                                                /s/ George W. Vien

| | |
|---|---|
| JONATHAN F. MITCHELL* | GEORGE W. VIEN (BBO # 547411) |
| Mitchell Law PLLC | Donnelly, Conroy, & Gelhaar, LLP |
| 106 East Sixth Street, Suite 900 | 260 Franklin Street, Suite 1600 |
| Austin, Texas 78701 | Boston, Massachusetts 02110 |
| (512) 686-3940 (phone) | (617) 720-2880 (phone) |
| (512) 686-3941 (fax) | (617) 720-3554 (fax) |
| jonathan@mitchell.law | gwv@dcglaw.com |

\* *pro hac vice* application forthcoming

Dated: October 6, 2018                             *Counsel for Plaintiff*