**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| FACULTY, ALUMNI, AND STUDENTS OPPOSED TO RACIAL PREFERENCES, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) |
| HARVARD LAW REVIEW; HARVARD LAW SCHOOL; PRESIDENT AND FELLOWS OF HARVARD COLLEGE; BETSY DEVOS, IN HER OFFICIAL CAPACITY AS U.S. SECRETARY OF EDUCATION, | ) ) ) ) ) ) ) ) |
| Defendants. | ) ) ) |

C.A. No. 1:18-cv-12105-LTS

**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS PURSUANT TO
RULES 12(b)(6) AND 12(b)(1) FOR DEFENDANTS HARVARD LAW SCHOOL AND
PRESIDENT AND FELLOWS OF HARVARD COLLEGE**

## TABLE OF CONTENTS

Page

INTRODUCTION ........................................................................................................... 1

LEGAL STANDARD.......................................................................................................3

ARGUMENT ...................................................................................................................4

I.    THE COMPLAINT FAILS TO STATE A CLAIM AGAINST HARVARD ......................... 4

        A.      The Harvard Law Review Is An Independent Entity, Not A Program Or Activity
                Of Harvard ................................................................................................ 4

        B.      FASORP Has Not Adequately Alleged Any Violation Of Title VI Or Title IX .... 6

                1.      Many of the harms alleged in the Complaint are not cognizable under Title
                        VI or Title IX ................................................................................ 7

                2.      The Complaint fails in its entirety because it does not plead factual bases
                        for any of the harms alleged........................................................ 9

II.   FASORP LACKS STANDING TO BRING THIS ACTION ........................................... 11

        A.      The Alleged Harms To Faculty And Alumni Do Not Establish The Injury,
                Causation, Or Redressability Prerequisites Of Article III Standing ..................... 12

        B.      The Complaint Fails To Point To Members Who Have Suffered The Alleged
                Harms ....................................................................................................... 15

        C.      FASORP Fails To Establish That It Can Sue On Behalf Of Its Purported
                Members ................................................................................................... 16

CONCLUSION............................................................................................................... 19

# TABLE OF AUTHORITIES

## CASES

Page(s)

*ACA Financial Guaranty Corp. v. Advest, Inc.*,
    512 F.3d 46 (1st Cir. 2008) ............................................................................................... 11

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) .......................................................................................... 3, 9, 10, 15

*Barker v. Conroy*,
    282 F. Supp. 3d (D.D.C. 2017) ........................................................................................ 13

*Becker v. Federal Election Commission*,
    112 F. Supp. 2d 172 (D. Mass 2000) ............................................................................... 14

*Beddall v. State Street Bank and Trust Company*,
    137 F.3d 12 (1st Cir. 1998) ................................................................................................. 5

*Benjamin v. Aroostook Medical Center, Inc.*,
    57 F.3d 101 (1st Cir. 1995) ............................................................................................... 13

*Bogdan v. Housing Authority of the City of Winston-Salem*,
    2006 WL 3848693 (M.D.N.C. Dec. 29, 2006) .................................................................. 7

*Camel Hair and Cashmere Institute of America. v. Associated Dry Goods Corp.*,
    799 F.2d 6 (1st Cir. 1986) ................................................................................................. 16

*Diamond v. Charles*,
    476 U.S. 54 (1986) ............................................................................................................ 16

*Doe v. Town of Stoughton*,
    917 F. Supp. 2d 160 (D. Mass. 2013) ................................................................................ 4

*Douglas v. Brookville Area School District*,
    836 F. Supp. 2d 329 (W.D. Pa. 2011) ................................................................................ 6

*Draper v. Healey*,
    827 F.3d 1 (1st Cir. 2016) ................................................................................................. 15

*Flores-Silva v. McClintock-Hernandez*,
    710 F.3d 1 (1st Cir. 2013) ................................................................................................... 3

*Foley v. Wells Fargo Bank, N.A.*,
    772 F.3d 63 (1st Cir. 2014) ............................................................................................. 3, 9

*Foman v. Davis*,
    371 U.S. 178 (1962) .......................................................................................................... 11

*Gebser v. Lago Vista Independent School District*,
    524 U.S. 274 (1998)............................................................................4, 6

*Gustavsen v. Alcon Laboratories, Inc.*,
    903 F.3d 1 (1st Cir. 2018).................................................................15

*Hunt v. Washington State Apple Advertising Commission*,
    432 U.S. 333 (1977)..........................................................................12

*Igartua v. United States*,
    86 F. Supp. 3d 50 (D.P.R. 2015).......................................................13

*Initiative and Referendum Institute v. Walker*,
    450 F.3d 1082 (10th Cir. 2006) ........................................................13

*International Union, United Automobile, Aerospace and Agricultural Implement*
    *Workers of America v. Brock*, 477 U.S. 274 (1986) ........................18

*Katz v. Pershing, LLC*,
    672 F.3d 64 (1st Cir. 2012)................................................................4

*Kowalski v. Tesmer*,
    543 U.S. 125 (2004)..........................................................................13

*Lam v. Curators of the University of Missouri at Kansas City Dental School*,
    122 F.3d 654 (8th Cir. 1997) ...........................................................5, 6

*Lopez v. San Luis Valley, Board of Cooperative Educational Services*,
    977 F. Supp. 1422 (D. Colo. 1997)....................................................7

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992)...............................................................11, 12, 13

*NAACP v. State of Alabama ex rel. Patterson*,
    357 U.S. 449 (1958)..........................................................................16

*O'Connor v. Davis*,
    126 F.3d 112 (2d Cir. 1997)...............................................................6

*Package Shop, Inc. v. Anheuser-Busch, Inc.*,
    1984 WL 6618 (D.N.J. Sept. 25, 1984) ...........................................17

*Playboy Enterprises, Inc. v. Public Service Commission of Puerto Rico*,
    906 F.2d 25 (1st Cir. 1990)...............................................................17

*Pollard v. Georgetown School District*,
    132 F. Supp. 3d 208 (D. Mass. 2015) ................................................4

*Rossley v. Drake University,*
    2018 WL 4275395 (S.D. Iowa June 12, 2018) ................................................................7

*Seiwert v. Spencer-Owen Community School Corporation,*
    497 F. Supp. 2d 942 (S.D. Ind. 2007) ............................................................................7

*Students for Fair Admissions, Inc. v. President and Fellows of Harvard College,*
    261 F. Supp. 3d 99 (D. Mass. 2017) ..............................................................................17

*Summers v. Earth Island Institute,*
    555 U.S. 488 (2009)........................................................................................................15

*United States v. AVX Corp.,*
    962 F.2d 108 (1st Cir. 1992) ............................................................................................4

*Valley Forge Christian College v. Americans United for Separation of Church*
    *and State, Inc.,* 454 U.S. 464 (1982)..............................................................................16

*Vega-Rodriguez v. Puerto Rico Telephone Company,*
    110 F.3d 174 (1st Cir. 1997) ..........................................................................................11

*Warth v. Seldin,*
    422 U.S. 490 (1975)........................................................................................................14

*Washington Legal Foundation v. Leavitt,*
    477 F. Supp. 2d 202 (D.D.C. 2007) .........................................................................12, 17

## STATUTES AND REGULATIONS

34 C.F.R. § 100.13(g) ...............................................................................................................5

34 C.F.R. § 106.11 ....................................................................................................................5

20 U.S.C. § 1681(a) ...................................................................................................4, 6, 7, 8, 9

42 U.S.C. § 2000d......................................................................................................4, 6, 7, 8, 9

## RULES

Fed. R. Civ. P. 8................................................................................................................10, 15

Fed. R. Civ. P. 12(b)(1)...............................................................................................................3

Fed. R. Civ. P. 12(b)(6)...........................................................................................................3, 5

Fed. R. Civ. P. 15 ......................................................................................................................11

Fed. R. Civ. P. 23(a)(4)..............................................................................................................17

Fed. R. Civ. P. 23(b)(2)...........................................................................................................17

Fed. R. Civ. P. 23(g) ............................................................................................................17

## INTRODUCTION

The Complaint filed by Plaintiff Faculty, Alumni, and Students Opposed to Racial Preferences ("FASORP") charges that Harvard Law Review editors chosen through a process that considers race and gender diversity, among other factors, are "less capable" (Compl. ¶ 26), "dilute[] the quality" of the Harvard Law Review membership (*id.* ¶ 27), and therefore "taint" (*id.* ¶ 31) and "diminish the prestige of the law review credential" (*id.* ¶ 28).  The Complaint also contains a single conclusory allegation that the Law Review discriminates unlawfully in its selection of articles "by giving preferential treatment to articles written by women or racial minorities."  *Id.* ¶ 25.

FASORP's allegations identify, in essence, four groups supposedly harmed by the challenged editor- and article-selection processes: faculty who perceive that they are subjected to deficient review and editing of their articles as a consequence of the Law Review's consideration of race and gender diversity, among many other factors, in the selection of some editors; alumni who believe their credential of having been a Law Review editor in the past is diminished due to that selection process; white or male faculty who submit articles for consideration and who claim to be disadvantaged by the article-selection process, to the extent it gives preferential treatment to non-white or non-male authors; and students who claim to be disadvantaged in the editor-selection process.  To remedy those supposed injuries, FASORP asks that the Law Review's editor- and article-selection processes be subject to review and approval by this Court and the Department of Education, and that the Court enjoin the selection of new editors—which would stop the Law Review from operating—until a new editor-selection process is approved.  *Id.* ¶¶ 38(e), (f).

None of FASORP's theories of injury is sufficient to maintain its lawsuit, and its claims against Harvard should be dismissed in their entirety and with prejudice for the following reasons.

*First*, the Complaint pleads no basis to conclude that Harvard is violating Title VI or Title IX.[1]  Indeed, it fails to explain why its allegations, even if taken as true, implicate Title VI or Title IX at all:  The Harvard Law Review Association ("HLR" or the "Law Review") is an independently incorporated and governed legal entity that does not receive federal funds.  The Law Review's independent publication policies are not subject to Title VI or Title IX and do not provide a basis for liability against Harvard under those statutes.  Moreover, several of the harms alleged by the Complaint—namely, the alleged injuries to alumni who claim their credential has lost prestige and to faculty who claim their articles have been reviewed and edited less well—are not legally cognizable under Title VI or Title IX.  And *none* of the injuries alleged in the Complaint is pleaded with the specificity required to survive a motion to dismiss.

*Second*, the Complaint fails to allege sufficient facts to establish that FASORP has standing—a defect that deprives this Court of jurisdiction.  FASORP claims to represent the legal interests of its members, but for some groups of members, the Complaint fails to allege that they are suffering any legally cognizable "injury in fact" (as noted above)—let alone one that is caused by the defendants' actions and could be redressed by a federal court.  In addition, for all of FASORP's members, the Complaint fails to allege any specific facts to suggest that even one

---

[1]     FASORP initially named Harvard Law School and President and Fellows of Harvard College as separate defendants.  Because President and Fellows of Harvard College is the corporate body responsible for the entire educational institution that includes Harvard Law School, and the Harvard Law School is not a separate legal entity, FASORP has agreed to dismiss Harvard Law School.  For convenience, this motion refers to Harvard Law School and President and Fellows of Harvard College collectively as "Harvard."

person actually has suffered or will imminently suffer any injury at all.  And beyond those defects, the Complaint fails to establish that FASORP is a true membership organization that represents the interests of its supposed members, as opposed to a bystander attempting to use this litigation as a vehicle to advance its policy objectives.

This is an extraordinary Complaint, one that implicates core First Amendment values and that seeks relief that might very well violate the First Amendment.  That makes it all the more imperative to enforce the limits of both the implied causes of action created by Title VI and Title IX and Article III jurisdiction.  FASORP's threadbare allegations fall far short of establishing either that any of its members could state a claim under those statutes or that FASORP has standing to pursue such claims.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) tests whether a complaint's factual allegations set forth "a plausible claim upon which relief may be granted."  *Foley v. Wells Fargo Bank, N.A.*, 772 F.3d 63, 71 (1st Cir. 2014).  A claim is plausible only "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Rule 12(b)(6) serves to weed out cases that do not warrant subjecting the defendant to the expensive and laborious discovery process when, even taking the allegations in the complaint as true, "the plaintiff could never win."  *Foley*, 772 F.3d at 72.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to survive dismissal.  *Iqbal*, 556 U.S. at 678; *see Flores-Silva v. McClintock-Hernandez*, 710 F.3d 1, 4 (1st Cir. 2013).

A motion to dismiss under Rule 12(b)(1) challenges whether a complaint has alleged a basis for subject-matter jurisdiction—in this case, by arguing that the plaintiff lacks Article III

standing.   A complaint "must set forth reasonably definite factual allegations, either direct or

inferential, regarding each material element needed to sustain standing."  *United States v. AVX*

*Corp.*, 962 F.2d 108, 115 (1st Cir. 1992).  The standing determination is "claim-specific,"

meaning that a plaintiff "must have standing to bring each and every claim that [he or] she

asserts."  *Katz v. Pershing, LLC*, 672 F.3d 64, 71 (1st Cir. 2012).

## ARGUMENT

### I.   THE COMPLAINT FAILS TO STATE A CLAIM AGAINST HARVARD

#### A.   The Harvard Law Review Is An Independent Entity, Not A Program Or Activity Of Harvard

Title VI and Title IX operate in tandem to forbid discrimination on the basis of race or

sex in any education "program or activity receiving Federal financial assistance."  42 U.S.C.

§ 2000d (Title VI; race); 20 U.S.C. § 1681(a) (Title IX; sex).  Both statutes thus condition "an

offer of federal funding on a promise by the recipient not to discriminate, in what amounts

essentially to a contract between the Government and the recipient of funds."  *Gebser v. Lago*

*Vista Indep. Sch. Dist.*, 524 U.S. 274, 286 (1998) (discussing Title IX).  The statutes therefore

apply only to entities that receive federal financial assistance; an alleged discriminatory act by an

entity that is not supported by federal funds does not implicate either statute.  *See Pollard v.*

*Georgetown Sch. Dist.*, 132 F. Supp. 3d 208, 229-230 (D. Mass. 2015); *Doe v. Town of*

*Stoughton*, 917 F. Supp. 2d 160, 165 (D. Mass. 2013).

Although Harvard itself receives federal financial assistance, the Law Review—which is

a separately incorporated, governed, and managed entity—does not.  That should be the end of

this case.  As the exhibits to the complaint make clear, "[t]he *Harvard Law Review* is a student-

run organization …. The organization is formally independent of the Harvard Law School.

Student editors make all editorial and organizational decisions[.]"  Compl. Ex. 1 at 1-2.[2]

FASORP does not even suggest, moreover—let alone plausibly allege—that Harvard caused the

Law Review to adopt the article-selection and editor-selection policies challenged in the

Complaint, or that Harvard claimed a right or exercised sufficient control to dictate the Law

Review's policies.  Again, the Complaint shows the opposite—that the Law Review's editors

control its article-selection and editor-selection policies.  Compl. Ex. 3 at 1.

These defects are fatal, because for Title VI or Title IX to be implicated here, the Law

Review must be a "program or activity" of *Harvard*.  Regulations require that a program or

activity be "operated by" the funded entity.  *See* 34 C.F.R. § 100.13(g) (Title VI) ("program or

activity" includes "the operations of" a college or university); *id.* § 106.11 (Title IX) (regulations

apply to "the education program or activity operated by" the recipient).  Where the Complaint

itself establishes that the Law Review is independent of Harvard and that Harvard does *not*

operate the Law Review, no liability can attach under either statute.  An independent entity not

controlled by the funding recipient is not a program or activity of the funding recipient.  *See, e.g.*,

*Lam v. Curators of the Univ. of Missouri at Kansas City Dental Sch.*, 122 F.3d 654, 656 (8th Cir.

1997) (independent dental clinic operated by a clinic instructor at a university was not controlled

by the university as required to establish that it was a "program or activity" for Title IX

---

[2]        "When … a complaint's factual allegations are expressly linked to—and admittedly
dependent upon—a document (the authenticity of which is not challenged), that document
effectively merges into the pleadings and the trial court can review it in deciding a motion to
dismiss under Rule 12(b)(6)."  *Beddall v. State St. Bank & Tr. Co.*, 137 F.3d 12, 17 (1st Cir.
1998).  Because FASORP's complaint expressly refers to certain exhibits, this Court should
consider them in determining the adequacy of FASORP's pleading.

purposes); *O'Connor v. Davis*, 126 F.3d 112, 118 (2d Cir. 1997) (internship program at unaffiliated hospital was not an education program or activity operated by a university).[3]

Because the Complaint alleges no basis from which the Court could infer either that HLR is federally funded or that Harvard is liable for HLR's editor- and article-section policies, it must be dismissed in its entirety.

### B.     FASORP Has Not Adequately Alleged Any Violation Of Title VI Or Title IX

Even if HLR were a "program or activity" of Harvard, FASORP's Complaint fails for the additional reason that it does not sufficiently plead any violation of Title VI or Title IX.  *First*, several of the alleged injuries to the faculty and alumni members of FASORP do not fall within the scope of the statutes—that is, even if proven, they would not cause these FASORP members to "be excluded from participation in, denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance" either "on the ground of race, color, or national origin," 42 U.S.C. § 2000d (Title VI), or "on the basis of sex," 20 U.S.C. § 1681(a) (Title IX).  *Second*, and more fundamentally, the Complaint supplies no facts from which the Court could plausibly infer a violation of the statutes with respect to *any* of the asserted injuries.

---

[3]     FASORP complains that Harvard Law School has a self-imposed Non-Discrimination Policy that it "is not enforcing … against the Harvard Law Review." Compl. ¶ 21.  But Title VI and Title IX do not create a federal cause of action to require a private party to enforce an internal non-discrimination policy it has voluntarily adopted.  *See, e.g.*, *Douglas v. Brookville Area Sch. Dist.*, 836 F. Supp. 2d 329, 348 n.15 (W.D. Pa. 2011) (failure to properly implement school's internal policy does not constitute a violation of Title IX) (citing *Gebser*, 524 U.S. at 291-292).  Accordingly, FASORP cannot salvage its failure to state a claim for relief under Title VI and Title IX by invoking this internal Harvard Law School policy.

### 1. Many of the harms alleged in the Complaint are not cognizable under Title VI or Title IX

Title VI and Title IX provide (in similar fashion) that no person shall "be excluded from participation in, denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance" either "on the ground of race, color, or national origin," 42 U.S.C. § 2000d, or "on the basis of sex," 20 U.S.C. § 1681(a).  Although both statutes have been construed to have a broad reach, they are not unlimited, and several of the harms alleged in Complaint do not fall within the statutes.

*First*, the Complaint alleges that FASORP members who are HLR alumni are harmed because HLR's consideration of diversity "diminish[es] the prestige of the law-review credential."  Compl. ¶ 25.  But even if that claim of injury were plausible—which it is not—it would not cause the alumni to be "excluded from participation in, … denied the benefits of, or … subjected to discrimination under any program or activity receiving Federal financial assistance."  42 U.S.C. § 2000d; 20 U.S.C. § 1681(a).  Alumni who are no longer enrolled in or employed at a university but who enjoy having attended there in the past are not seeking to participate in a program at that university.  *See, e.g.*, *Rossley v. Drake Univ.*, __ F. Supp. 3d __, 2018 WL 4275395 (S.D. Iowa June 12, 2018), at *10 (plaintiff removed from a university board, who did not attend university, had not been "denied … access to any education programs or activities" or "subjected to discrimination under an education program or activity").[4]  Indeed, the

---

[4]     *See also, e.g.*, *Seiwert v. Spencer-Owen Cmty. Sch. Corp.*, 497 F. Supp. 2d 942, 954 (S.D. Ind. 2007) ("Title IX only protects against actions that interfere with educational opportunities or activities."); *Bogdan v. Hous. Auth. of the City of Winston-Salem*, 2006 WL 3848693, at *6 (M.D.N.C. Dec. 29, 2006) (Title VI plaintiff must be "an intended beneficiary" of, "an applicant" to, or "a participant" in a federally funded program); *Lopez v. San Luis Valley, Bd. of Co-op. Educ. Services*, 977 F. Supp. 1422, 1425 (D. Colo. 1997) ("No court has held that a plaintiff who is neither a potential beneficiary of a federally funded education program nor an employee of such a program can maintain a Title IX action for sex discrimination.").

consequences of holding otherwise would be breathtaking; anyone who had been connected with a federally funded program years in the past could assert an implied right of action under Title VI or Title IX over the program's present activities.  Moreover, any supposed diminution in the prestige of an HLR credential would not constitute discrimination "on the ground of race, color, or national origin," 42 U.S.C. § 2000d, or "on the basis of sex," 20 U.S.C. § 1681(a); it would affect all alumni, irrespective of their race or sex.[5]

*Second*, the Complaint alleges (Compl. ¶¶ 26-27) that faculty (who may have no affiliation with Harvard) who submit articles to HLR are harmed because their submissions are "judged by less capable students" and, if accepted for publication, edited by less capable students.  But the Complaint fails to explain how having an article reviewed or edited by someone who does not meet a supposed level of "capability" constitutes being "excluded from participation in, … denied the benefits of, or … subjected to discrimination under any program or activity receiving Federal financial assistance," 42 U.S.C. § 2000d; 20 U.S.C. § 1681(a). Again, such an interpretation would radically expand the implied right of action under Title VI or Title IX, allowing suit by any claimant who interacts or seeks to interact with a federally funded program.  And again, even if the alleged harms were plausible—which they are not—they would not constitute discrimination on the basis of race or sex; any supposed deficiency in reviewing or editing articles would affect authors of any race or gender.

---

[5]     The Complaint alleges (Compl. ¶ 29) that female or non-white HLR alumni suffer "additional" injury because their law-review credentials are "viewed with suspicion."  But any such "suspicion" would also not cause the supposed victims of the harm to be "excluded from participation in, … denied the benefits of, or … subjected to discrimination under any program or activity receiving Federal financial assistance."  Their participation any such program ended long ago, when they graduated from Harvard Law School.

Thus, even accepting these allegations as true for purposes of a motion to dismiss, FASORP "could never win," *Foley*, 772 F.3d at 72, because the alumni and faculty are not (1) denied the benefits of a federally funded program (2) on the basis of their race or sex, 42 U.S.C. § 2000d; 20 U.S.C. § 1681(a). These allegations of the Complaint do not fall within the ambit of the statutes and therefore do not state a claim for which relief can be granted.

**2.     The Complaint fails in its entirety because it does not plead factual bases for any of the harms alleged**

The Complaint should also be dismissed because, even if it articulated any theory of harm that would create a violation of Title VI or Title IX, it has not pleaded facts sufficient to support the inference that any such violation is occurring. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678. A claim is plausible only "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* FASORP's claims fail to meet that basic standard of plausibility.

As to HLR's article-selection practices, FASORP offers nothing but a bare and conclusory assertion that HLR "discriminates on account of race and sex when selecting articles for publication, by giving preferential treatment to articles written by women or racial minorities." Compl. ¶ 18. It says nothing about *why* FASORP believes that to be true. It does not, for example, cite any statement of such an article-selection policy by HLR, or any report that such a policy exists. And even if FASORP had a more adequately pleaded factual basis for the existence of such a policy, the Complaint contains no factual exposition of the manner in which any such policy operates that would allow the Court to ascertain whether the allegation states a

claim under law.  Such "[t]hreadbare recitals …, supported by mere conclusory statements, do not suffice" to survive a motion to dismiss.  *Iqbal*, 556 U.S. at 678.

The Complaint is similarly deficient in offering facts sufficient to support FASORP's theories of harm from HLR's editor-selection practices.  For example, although the Complaint alleges that articles submitted to the Law Review are "judged by less capable students" as a result of the Law Review's editor-selection policies (Compl. ¶ 26), and that "the Law Review's use of race and sex preferences dilutes the quality of the students who edit an author's manuscript" (Compl. ¶ 27), it offers (unsurprisingly) no basis for the conclusory assertion that Law Review editors selected through a process that considers a variety of lived experience and perspectives are less capable as editors than those selected exclusively through grades or the writing competition.  Nor does the Complaint plead any facts substantiating the allegation that "the prestige of the law-review credential" has somehow been "diminish[ed]" (Compl. ¶ 28) by HLR's current policies.

Likewise, the Complaint offers nothing more than a bare assertion that FASORP members who are current Harvard Law School students "will be denied an equal opportunity to compete for membership on the Law Review" on account of their race or sex (Compl. ¶ 30).  Once again, FASORP does not plead any facts from which the Court could ascertain whether the manner in which HLR may consider race or gender—among many other factors—in its editor-selection process is consistent with governing law.  Those deficiencies are fatal to the Complaint, because Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."  *Iqbal*, 556 U.S. at 678-679.

Finally, as HLR's motion to dismiss explains in greater detail (Mem. 12-14), the Complaint fails for the more fundamental reason that HLR's practices—even if they were as alleged in the Complaint—are consistent with Supreme Court precedent.[6]

## II.    FASORP LACKS STANDING TO BRING THIS ACTION

Even if FASORP could state a claim against Harvard for the actions of the independent entity HLR (it cannot), and even if those claims were adequately pleaded against any defendant (they are not), the Complaint fails at the threshold for the independent reason that FASORP lacks standing to maintain an action in federal court. As the party invoking federal jurisdiction, FASORP bears the burden of establishing that it has standing. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). If the Complaint fails adequately to allege standing, then the Court lacks subject-matter jurisdiction, for "standing is an essential and unchanging part of the case-or-controversy requirement of Article III." *Id.* at 560.

FASORP has not met that burden. A plaintiff relying on a theory of associational standing bears the burden of pleading that it has standing to advance the interests of those individuals it refers to as its members by establishing, at a minimum, that "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane

---

[6]    FASORP cannot resolve the defects in its case identified in this motion, and so it should be denied leave to amend the Complaint. Although Rule 15 "reflects a liberal amendment policy," the Court "enjoys significant latitude in deciding whether to grant leave to amend." *ACA Fin. Guar. Corp. v. Advest, Inc.*, 512 F.3d 46, 55 (1st Cir. 2008). One recognized ground for denying leave to amend is that amendment would be "'futil[e].'" *Id.* at 56 (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). This is a case where "leave to amend would be an empty exercise," *Vega-Rodriguez v. Puerto Rico Tel. Co.*, 110 F.3d 174, 184 (1st Cir. 1997). FASORP's complaint fails not just because it lacks specific and detailed allegations but because the entire theory underlying the Complaint is divorced from the text and purposes of the relevant statutes, and because (as explained below, at pp. 16-19), FASORP cannot invoke the jurisdiction of the courts on its members' behalf. Amendment would only prolong these proceedings and the burdens they impose on the Court, the students who edit the Law Review, and Harvard, and should not be allowed.

to [its] purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 343 (1977).  In addition, the organization must establish that it is a genuine membership organization—*i.e.*, that it is truly answerable to and supported by its members.  *See, e.g.*, *Washington Legal Foundation v. Leavitt*, 477 F. Supp. 2d 202, 210 (D.D.C. 2007); *infra* pp. 16-19.

The Complaint does not meet those requirements.  *First*, as discussed above, some of the harms alleged do not establish any legally cognizable "injury in fact"—that is, "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560.  The Complaint also does not explain how the alleged injuries were caused by the challenged practices or how they could be redressed the federal courts.  *Second*, the Complaint does not point to any FASORP member who has suffered (or imminently risks suffering) *any* of the harms alleged by the Complaint.  *Third*, FASORP has not shown that it is a genuine membership organization that truly represents the interests of its members, as is required to allow it to stand in its members' shoes and invoke the jurisdiction of the federal courts.

### A.    The Alleged Harms To Faculty And Alumni Do Not Establish The Injury, Causation, Or Redressability Prerequisites Of Article III Standing

As discussed above, some of the harms alleged in the Complaint—in particular, the claims of diminished "prestige" for alumni and of inadequate review and editing of faculty article submissions—are not cognizable under Title VI or Title IX because the injuries described fall outside the scope of the statute.  That is a jurisdictional defect, as well as a reason the complaint fails to plead a claim on which relief can be granted, because an "injury in fact" sufficient to confer standing must be "an invasion of a *legally protected* interest," *Lujan*, 504

U.S. at 560 (emphasis added).  *See Initiative & Referendum Inst. v. Walker*, 450 F.3d 1082, 1093

(10th Cir. 2006) (en banc) ("[T]he term 'legally protected interest' must do some work in the

standing analysis.  We believe … this term has independent force and meaning[.]"); *see also,*

*e.g.*, *Igartua v. United States*, 86 F. Supp. 3d 50, 55 (D.P.R. 2015) (complaint dismissed for

failure to plead a "legally protected interest"), *aff'd on other grounds sub nom. Igartua v.*

*Obama*, 842 F.3d 149 (1st Cir. 2016).

   Those alleged harms also fail to establish the requisite injury in fact because they are so

unarticulated as to be insufficiently "concrete and particularized," *Lujan*, 504 U.S. at 560.  In

what sense, exactly, are HLR alumni harmed by the supposed diminution in the "prestige" of

their law-review credential?  In what regard is editing inadequate, and how does any such

inadequacy harm authors?  The Complaint leaves those basic questions unanswered, which

deprives the Court of jurisdiction over claims based on those injuries.  *See, e.g.*, *Barker v.*

*Conroy*, 282 F. Supp. 3d 346, 357-358 (D.D.C. 2017) (atheist who claimed "he was denied the

'prestige and status' of having served as guest chaplain" in the House of Representatives had not

alleged a "sufficiently 'concrete and particularized'" injury).

   To the extent FASORP's faculty or alumni members might argue that they are in fact

challenging the Law Review's alleged discrimination against *current students* in its editor-

selection policies, that argument would also fail.  The prudential third-party standing doctrine

prevents a party from bringing suit to vindicate "the legal rights or interests of third parties."

*Kowalski v. Tesmer*, 543 U.S. 125, 129 (2004).  Alumni and prospective authors cannot show

that students are in any way hindered from bringing suit to vindicate their own rights, as would

be required to avoid the limitations of the third-party standing doctrine here.  *Benjamin v.*

*Aroostook Med. Ctr., Inc.*, 57 F.3d 101, 106 (1st Cir. 1995).  To the contrary, FASORP claims to

have student members who are seeking to vindicate their own rights in this same litigation.  *See* Compl. ¶ 30.

FASORP also has not adequately pleaded that any of the alleged injuries to its faculty or alumni members—even if they were cognizable—was *caused by* HLR's challenged practices or could be *redressed* by the relief FASORP seeks.  The Supreme Court has held that where a plaintiff complains about action that is directed at someone else, it is "substantially more difficult [for that plaintiff] to meet the minimum requirement of Art. III: to establish that, in fact, the asserted injury was the consequence of the defendants' asserted actions, or that prospective relief will remove the harm."  *Warth v. Seldin*, 422 U.S. 490, 505 (1975).  This case proves the point.  Even if FASORP could establish that a diminution in the quality of HLR's review or editing of articles has occurred (and that it violates Title VI or Title IX), the Complaint does not explain why such inadequacy would be traceable to the challenged policies—in other words, why editors chosen under the challenged policies would be less skilled in their review or editing of articles than other editors.  Nor has it explained how the challenged policies would cause a diminution in the prestige of the HLR credential, or how any such diminution of prestige would be redressed by the forward-looking relief that FASORP seeks.  Courts are required to consider, in determining their jurisdiction, "whether the line of causation between the illegal conduct and injury is too attenuated" and "whether the prospect of obtaining relief from the injury as a result of a favorable ruling is too speculative."  *Becker v. FEC,* 112 F. Supp. 2d 172, 177 (D. Mass. 2000) (citing *Allen*, 468 U.S. at 751-752), *aff'd*, 230 F.3d 381 (1st Cir. 2000).  The causal chain between HLR's purported discriminatory practice and the claimed harm to faculty and alumni is too "abstract, conjectural," and causally remote from the alleged discriminatory practices, *id.* at 180, to support standing.

### B.     The Complaint Fails To Point To Members Who Have Suffered The Alleged Harms

To the extent the Complaint alleges *any* legally cognizable injury, it suffers from another serious flaw:  It fails to point to any FASORP member who is alleged to have actually suffered, or to be at imminent risk of suffering, any of the supposed injuries.  *See, e.g.*, *Summers v. Earth Island Institute*, 555 U.S. 488, 498 (2009) (associational plaintiff must "make specific allegations establishing that at least one identified member had suffered or would suffer harm"); *Draper v. Healey*, 827 F.3d 1, 3 (1st Cir. 2016) (Souter, J.) (similar).

The Complaint does not identify, either by name or with other concrete particulars, a single current Harvard Law School student who either applied to the Law Review but was not selected, or plans to apply to the Law Review in the immediate future and can explain why he or she would be disadvantaged by the Law Review's selection policies.  Nor does the Complaint identify a single faculty member who (a) has submitted an article to the Law Review during the time when the challenged practices have been in place, (b) imminently plans to submit an article, or (c) has suffered inadequate editing by HLR editors who were selected for the Law Review through the challenged practices.  And the Complaint does not identify a single HLR alumnus member who believes, and can explain why, his or her HLR credential has been diminished by HLR's editor-selection practices.

Those are fatal defects.  Standing, like any other element of a cause of action, must be pleaded with the specificity and plausibility required by Rule 8.  *Gustavsen v. Alcon Labs., Inc.*, 903 F.3d 1, 7 (1st Cir. 2018).  "Threadbare recitals," "supported by mere conclusory statements," do not suffice to plead standing any more than they suffice to plead other elements of a claim.  *Iqbal*, 556 U.S. at 678.  And in this context, it is particularly important to enforce those requirements in rigorous fashion.  As the Supreme Court has admonished, the federal courts'

jurisdiction requires more than "important issues and able litigants." *Valley Forge Christian Coll. v. Americans United for Separation of Church and State*, 454 U.S. 464, 489 (1982).  The bedrock constitutional requirement of standing serves "to assure that the legal questions presented to the court will be resolved, not in the rarified atmosphere of a debating society, but in a concrete factual context conducive to a realistic appreciation of the consequences of judicial action." *Id.* at 472.  Especially in cases raising issues of broad public significance, the right to invoke the federal judicial power "must be placed in the hands of those who have a direct stake in the outcome," rather than "in the hands of concerned bystanders, who will use it simply as a vehicle for the vindication of value interests." *Diamond v. Charles*, 476 U.S. 54, 62 (1986) (internal quotation marks omitted).  Without any factual allegation plausibly supporting the inference that any actual member of FASORP has been or will be injured by the Law Review's article-selection and editor-selection policies, this case is not a proper vehicle for judicial resolution of a concrete dispute.

### C.      FASORP Fails To Establish That It Can Sue On Behalf Of Its Purported Members

Even if FASORP had pleaded a sufficient factual basis to infer that one of its members would have standing to sue as an individual, FASORP has not established that it can stand in the shoes of its members and assert "associational standing" on their behalf.

When individuals create an association by "pool[ing] their interests, activities and capital under a name and form that will identify collective interests," *Camel Hair & Cashmere Inst. of Am., Inc. v. Associated Dry Goods Corp.*, 799 F.2d 6, 11 (1st Cir. 1986), courts may permit the association to sue on the individuals' behalf, because the association "and its members are in every practical sense identical," *NAACP v. State of Ala. ex rel. Patterson*, 357 U.S. 449, 459 (1958).  But as several courts have held, associations lack standing where their members lack

sufficient control over the associations to ensure that the associations genuinely represent the members' interests. *See, e.g.*, *Washington Legal Foundation*, 477 F. Supp. 2d at 210 (organization lacked standing where members did not "play any role in selecting [the organization's] leadership, guiding its activities, or financing those activities"); *Package Shop, Inc. v. Anheuser-Busch, Inc.*, 1984 WL 6618, at \*41 (D.N.J. Sept. 25, 1984) (members lacked "the control over the organization which would give it standing to sue on their behalf"); *see also Playboy Enterprises, Inc. v. Public Service Commission of Puerto Rico*, 906 F.2d 25 (1st Cir. 1990) (allowing trade association to sue because it did genuinely represent its members).[7]

That requirement serves important interests, including that it avoids circumvention of the class action procedures of Federal Rule of Civil Procedure 23.  The class action is the principal means the Federal Rules provide for groups of people to seek relief—including groupwide injunctive relief of the sort that FASORP seeks, Fed. R. Civ. P. 23(b)(2)—and the rules incorporate various safeguards to ensure that class plaintiffs and counsel genuinely represent the class in seeking such relief. *See, e.g.*, Fed. R. Civ. P. 23(a)(4), (g).  If associations were allowed to sue without assurances (like those required by Rule 23) that they truly represent their members, then the device of associational standing would effectively supplant Rule 23(b)(2) class actions.

---

[7]    *Students for Fair Admissions, Inc. v. President & Fellows of Harvard College*, 261 F. Supp. 3d 99 (D. Mass. 2017), is not to the contrary.  There, the court held that a voluntary membership association need not demonstrate that its members exercise genuine control such that the organization can meaningfully be said to represent them. *Id.* at 106-109.  Harvard respectfully disagrees with that ruling, and in any event, it is distinguishable here for two reasons.  First, the plaintiff in SFFA had identified details about its members, *id.* at 105-106; FASORP has not.  Second, the court there noted that "there may be situations … in which the adequacy of an organization's representativeness is so seriously in doubt that the Court should consider *Hunt*'s indicia-of-membership analysis or some other criteria to further evaluate the issue of associational standing." *Id.* at 110.  This is just such a case.

The Supreme Court has recognized that, in some cases, associational standing may be a mechanism superior to that of the class action for advancing a collective litigation aim. *See International Union, United Automobile, Aerospace & Agricultural Implement Workers of Am. v. Brock*, 477 U.S. 274 (1986). But the suitability of associational standing in lieu of the class action depends on a showing that the association in question genuinely represents the priorities of its members. Thus, in *Brock*, when the Court considered the government's request to overrule *Hunt* on the basis that associational standing does not ensure adequate representation as do the requirements of Rule 23, it did not "dismiss out of hand the [government's] concern that associations allowed to proceed under *Hunt* will not always be able to represent adequately the interests of all their injured members"; it simply held that such concerns should *generally* be alleviated by the prospect that "[t]he very forces that cause individuals to band together in an association will … provide some guarantee that the association will work to promote their interests." *Id.* at 290. That reassurance does not exist, however, where an association is *not* formed by individuals "band[ing] together" to protect common interests and where there is no "guarantee that the association will work to promote" its members' interests. *Id.* The indicia-of-membership standard ensures that an aggrieved group of individuals can sue through an association rather than pursuing a class action where—but only where—the association is actually a means for the members to band together to advance common interests.

FASORP alleges nothing to suggest that it genuinely represents its members' interests, as is necessary for it to sue on their behalf. The Complaint offers no indication that FASORP's members had any role in forming the organization or have any rights in it whatsoever, let alone any control or influence over it or any role in funding it. Indeed, the Complaint provides no information whatsoever about the rights and responsibilities of FASORP's members. FASORP's

website, which the Complaint references (Compl. ¶ 3), makes clear that anyone can "join" by submitting a name, e-mail address, and the name of an affiliated college or university; "[t]here is no charge to become a member."  Indeed, the website makes clear that FASORP's purpose is to pursue litigation like this suit; it notes that "membership will expand the range of universities that FASORP can target for lawsuits" and that it is "especially interested in evidence and anecdotes related to" this case.  There is thus no basis for the Court to infer that FASORP is actually an organization constituted to pursue the common interests of its members, as opposed to a litigation vehicle using its "membership" list in an effort to invoke federal jurisdiction.

## CONCLUSION

The Complaint should be dismissed with prejudice for failure to state a claim and for lack of jurisdiction.

Respectfully submitted,

/s/ Seth P. Waxman
Seth P. Waxman (*pro hac vice*)
Paul R.Q. Wolfson (*pro hac vice*)
Daniel Winik (*pro hac vice* pending)
WILMER CUTLER PICKERING
    HALE AND DORR LLP
1875 Pennsylvania Ave. NW
Washington, DC 20006
Tel.: (202) 663-6800
Fax: (202) 663-6363
seth.waxman@wilmerhale.com

Felicia H. Ellsworth (BBO # 665232)
WILMER CUTLER PICKERING
    HALE AND DORR LLP
60 State Street
Boston, MA 02109
Tel.: (617) 526-6000
Fax: (617) 526-5000
felicia.ellsworth@wilmerhale.com
*Attorneys for Defendants Harvard Law School*
*and President and Fellows of Harvard College*

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the CM/ECF system will be sent

electronically to the registered participants as identified on the Notice of Electronic Filing.

*/s/ Seth P. Waxman*
Seth P. Waxman