# UNITED STATES DISTRICT COURT

## DISTRICT OF MASSACHUSETTS

## BOSTON DIVISION

| | |
|---|---|
| FACULTY, ALUMNI, AND STUDENTS OPPOSED TO RACIAL PREFERENCES, <br><br> Plaintiff, <br><br> v. <br><br> HARVARD LAW REVIEW; HARVARD LAW SCHOOL; PRESIDENT AND FELLOWS OF HARVARD COLLEGE; BETSY DeVOS, in her official capacity as U.S. Secretary of Education, <br><br> Defendants. | Civil Action No. 1:18-cv-12105 <br><br><br> <u>Oral Argument Requested</u> |

## MEMORANDUM IN SUPPORT OF <br> <u>DEFENDANT *HARVARD LAW REVIEW*'S MOTION TO DISMISS</u>

# TABLE OF CONTENTS

**Page**

STATEMENT OF FACTS .......................................................................................... 3

STANDARD OF REVIEW ....................................................................................... 5

ARGUMENT ............................................................................................................ 6

I.      FASORP Lacks Associational Standing ........................................................ 6

II.     FASORP Has Failed To State a Claim Upon Which Relief Can Be Granted ................... 8

      A.     FASORP Has Not Alleged That the *Law Review* Receives Federal Funding ........ 9

      B.     FASORP Has Not Alleged That the *Law Review* Is a "Program or Activity" Under Title VI or Title IX .................................................................................. 10

      C.     FASORP Has Not Advanced a Cognizable Claim That the *Law Review* Discriminates on the Basis of Race or Sex ........................................................ 12

CONCLUSION ......................................................................................................... 14

## TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009)...............................................................................................2, 5, 10, 14

*Bell Atlantic Corp. v. Twombly,*
    550 U.S. 544 (2007)...............................................................................................2

*Berner v. Delahanty,*
    129 F.3d 20 (1st Cir. 1997)....................................................................................6

*Boston's Children First v. City of Boston,*
    62 F. Supp. 2d 247 (D. Mass. 1999) ....................................................................9

*Cannon v. University of Chicago,*
    441 U.S. 677 (1979)...............................................................................................11

*Clapper v. Amnesty Int'l, USA,*
    568 U.S. 398 (2013)...............................................................................................6

*Clorox Co. Puerto Rico v. Proctor & Gamble Commercial Co.,*
    228 F.3d 24 (1st Cir. 2000)....................................................................................11

*Cohen v. Brown University,*
    101 F.3d 155 (1st Cir. 1996)..................................................................................2, 12

*Comfort ex rel. Neumyer v. Lynn School,*
    131 F. Supp. 2d 253 (D. Mass. 2001) ..................................................................8

*Davis ex rel. LaShonda D. v. Monroe County Bd. of Educ.,*
    526 U.S. 629 (1999)...............................................................................................8

*Dep't of Transp. v. Paralyzed Veterans of Am.,*
    477 U.S. 597 (1986)...............................................................................................9

*Draper v. Healey,*
    827 F.3d 1 (1st Cir. 2016)......................................................................................1, 7

*Fisher v. University of Texas at Austin,*
    570 U.S. 297 (2013)...............................................................................................13

*Fisher v. University of Texas at Austin,*
    136 S. Ct. 2198 (2016)...........................................................................................2, 13

*Food & Water Watch, Inc. v. Vilsack,*
    808 F.3d 905 (D.C. Cir. 2015) ..............................................................................6

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*Frazier v. Fairhaven Sch. Comm.*,
   276 F.3d 52 (1st Cir. 2002) ................................................................................. 11

*G.G. ex rel. Grimm v. Gloucester Cty. Sch. Bd.*,
   822 F.3d 709 (4th Cir. 2016), *vacated on other grounds*, 137 S. Ct. 1239
   (2017) ...................................................................................................................... 9

*Grutter v. Bollinger*,
   539 U.S. 306 (2003) ...................................................................................... 12, 13

*Hochendoner v. Genzyme Corp.*,
   823 F.3d 724 (1st Cir. 2016) .................................................................................. 5

*Hunt v. Washington State Apple Advertising Comm'n*,
   432 U.S. 333 (1977) ............................................................................................ 6, 7

*Juarez v. Select Portfolio Servicing, Inc.*,
   708 F.3d 269 (1st Cir. 2013) .................................................................................. 5

*Kader v. Sarepta Therapeutics, Inc.*,
   No. 1:14-cv-14318-ADB, 2016 WL 1337256 (D. Mass. Apr. 5, 2016) ................ 11

*Lemos v. Bank of America*,
   132 F. Supp. 3d 261 (D. Mass. 2015) ................................................................ 5, 6

*Lipsett v. University of Puerto Rico*,
   864 F.2d 881 (1st Cir. 1988) ................................................................................ 11

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992) ............................................................................................ 6, 7

*Maldonado v. Fontanes*,
   568 F.3d 263 (1st Cir. 2009) ................................................................................ 10

*N. Ind. Gun & Outdoor Shows, Inc. v. City of South Bend*,
   163 F.3d 449 (7th Cir. 1998) ............................................................................... 11

*OCA-Greater Houston v. Texas*,
   867 F.3d 604 (5th Cir. 2017) ................................................................................. 6

*Regents of Univ. of California v. Bakke*,
   438 U.S. 265 (1978) ...................................................................................... 12, 13

*Rinsky v. Trustees of Boston Univ.*,
   No. 10cv10779-NG, 2010 WL 5437289 (D. Mass. Dec. 27, 2010) ...................... 12

# TABLE OF AUTHORITIES
## (continued)

Page(s)

*Sexual Minorities Uganda v. Lively*,
    960 F. Supp. 2d 304 (D. Mass. 2013) ......................................................................6

*Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*,
    No. 14-cv-14176-ADB, 2017 WL 2407254 (D. Mass. June 2, 2017) ......................2

*Spokeo, Inc v. Robins*,
    136 S. Ct. 1540 (2016) ...............................................................................................6, 8

*Summers v. Earth Island Inst.*,
    555 U.S. 488 (2009) ................................................................................................1, 7

*Trans-Spec Truck Serv. v. Caterpillar Inc.*,
    524 F.3d 315 (1st Cir. 2008) .....................................................................................11

*United States ex rel. Cunningham v. Millennium Labs., Inc.*,
    202 F. Supp. 3d 198 (D. Mass. 2016) .......................................................................5

*United States v. AVX Corp.*,
    962 F.2d 108 (1st Cir. 1992) ...................................................................................6, 7

*Watterson v. Page*,
    987 F.2d 1 (1st Cir. 1993) .........................................................................................11

*Whitmore v. Arkansas*,
    495 U.S. 149 (1990) ....................................................................................................8

**FEDERAL STATUTES**

20 U.S.C. § 1681 ...............................................................................................................1, 4, 8

20 U.S.C. § 1681(a) .............................................................................................................9, 10

20 U.S.C. § 1687(2) ..................................................................................................................10

42 U.S.C. § 2000d ............................................................................................................ 1, passim

42 U.S.C. § 2000d-4a(2)(A) .....................................................................................................10

**FEDERAL RULES**

Fed. R. Civ. P. 10(c) .................................................................................................................11

Fed. R. Civ. P. 12(b)(1) ..........................................................................................................1, 5

Fed. R. Civ. P. 12(b)(6) ................................................................................................2, 3, 5, 11

**TABLE OF AUTHORITIES**
**(continued)**

Page(s)

**FEDERAL REGULATIONS**

28 C.F.R. § 42.102(c)...............................................................................................9

34 C.F.R. § 106.3(b) ...............................................................................................12

**OTHER AUTHORITIES**

FASORP, https://fasorp.org/.................................................................................1, 8

Secretary of Commonwealth, Corporations Division, *Business Entity Summary:*
    *The Harvard Law Review Association*, http://corp.sec.state.ma.us/CorpWeb/
    CorpSearch/CorpSummary.aspx?FEIN=042104292&SEARCH_TYPE=1 (last
    visited Dec. 16, 2018) ........................................................................................11

Plaintiff Faculty, Alumni, and Students Opposed to Racial Preferences ("FASORP") describes itself as "a voluntary membership organization that litigates against race and sex preferences in academia."  FASORP, https://fasorp.org/ (incorporated into the complaint at ¶ 3). According to FASORP's website, which apparently was created the day before the group filed suit, FASORP's "members include faculty, alumni, and students of many different universities." *Id.*  Yet without actually identifying a single member who has suffered any cognizable harm, FASORP has filed a complaint alleging that Defendant *Harvard Law Review*'s ("*Law Review*")[1] editor- and article-selection policies violate Title VI, 42 U.S.C. § 2000d, and Title IX, 20 U.S.C. § 1681.  FASORP's complaint nowhere explains why the *Law Review* is subject to either Title VI or Title IX.  Nonetheless, to remedy these asserted violations, FASORP seeks extraordinary judicial relief that would transform this Court into an Article III Editor-In-Chief, with the responsibility to oversee the *Law Review*'s editor- and article-selection decisions.  FASORP's claims lack any merit, and its complaint must be dismissed.

As an initial matter, FASORP has failed to establish that it has standing to sue.  Under binding Supreme Court and First Circuit precedent, an association must identify at least one member who has suffered a cognizable injury to satisfy the requirements of Article III.  *E.g.*, *Summers v. Earth Island Inst.*, 555 U.S. 488, 498 (2009); *Draper v. Healey*, 827 F.3d 1, 3 (1st Cir. 2016) (Souter, J.).  FASORP's complaint does not satisfy this straightforward requirement.  This Court, accordingly, lacks jurisdiction and must dismiss FASORP's claims under Federal Rule of Civil Procedure 12(b)(1).

---

[1] The *Harvard Law Review*, a legal journal published by the Harvard Law Review Association, is not a legal entity and lacks the capacity to be sued.  FASORP instead should have named the Harvard Law Review Association as the real party in interest, and any references in this Memorandum to the "*Law Review*" should be understood as references to that corporate entity.

1

FASORP's claims also fail on the merits. Its complaint does not adequately allege a single one of the requisite elements for a Title VI or Title IX claim. FASORP nowhere alleges that the *Law Review* receives federal funding at all, and it makes no effort to allege facts sufficient to establish that the *Law Review* qualifies as a "program or activity" under the statutes. In fact, the allegations that FASORP does include seem inconsistent with those statutory requirements. "A pleading that offers 'labels and conclusions' . . . will not do." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)) (internal quotation marks omitted). But that is all this pleading does. It must be dismissed under Federal Rule of Civil Procedure 12(b)(6).

Equally fatal, FASORP has not alleged actionable discrimination. The *Law Review*'s consideration of gender and race is entirely consistent with binding Supreme Court and First Circuit precedent. The First Circuit has held that affirmative action is permissible under the civil rights statutes. *See Cohen v. Brown University*, 101 F.3d 155, 170 n.11, 172 (1st Cir. 1996) ("Like other anti-discrimination statutory schemes, the Title IX regime *permits* affirmative action. . . . [A]lthough Congress could easily have done so, it did not ban affirmative action or gender-conscious remedies under Title IX."). And the Supreme Court has rejected the notion that an entity "discriminates" when it considers applicants' race and sex as part of its admissions or selection processes. Instead, time and again, the Supreme Court has approved of race- and gender-conscious decision-making, so long as race and gender are used as part of a holistic process, instead of mechanically. *See, e.g.*, *Fisher v. University of Texas at Austin ("Fisher II")*, 136 S. Ct. 2198, 2208 (2016). FASORP's claim therefore amounts to a plea for this Court to overturn binding First Circuit and Supreme Court precedent—"something it decidedly cannot do." *Students for Fair*

*Admissions, Inc. v. President & Fellows of Harvard Coll.*, No. 14-cv-14176-ADB, 2017 WL 2407254, at *1 (D. Mass. June 2, 2017).

All in all, because FASORP's allegations fail to satisfy even the most forgiving pleading standard, and because the *Law Review*'s selection processes do not violate Titles VI and IX under binding Circuit precedent, this Court should dismiss FASORP's complaint.

## STATEMENT OF FACTS[2]

Plaintiff FASORP is an "unincorporated nonprofit membership association organized under the laws of Texas." Complaint ("Compl."), at ¶ 3, ECF No. 1. Its asserted purpose is to eliminate the use of "race and sex preferences" at American universities. *Id.* ¶ 32. FASORP alleges that its "membership" includes a range of injured individuals—including current *Law Review* editors, *Law Review* alumni, prospective *Law Review* editors, published *Law Review* authors, and prospective *Law Review* authors. *Id.* ¶¶ 25–31.

Defendant "*Harvard Law Review* is a student-run organization whose primary purpose is to publish a journal of legal scholarship." Compl. Ex. 1 ("Ex. 1"), at 1, ECF No. 1-1. "The organization is formally independent of the Harvard Law School." *Id.*

FASORP's complaint focuses on two specific components of the *Law Review*'s student-run operations: its selection of new members and its selection of articles to publish. Compl. ¶¶ 8–18. As relevant to membership selection, the *Law Review* invites forty-eight editors to join each year from the rising second-year class of Harvard law students. *Id.* ¶ 14. Of those forty-eight new members, twenty are selected based solely on their scores on an annual writing competition; ten are selected based on a combination of their writing-competition scores and 1L grades; and

---

[2] Solely for the purpose of this Motion, and as required under Federal Rule of Civil Procedure 12(b)(6), Defendant *Harvard Law Review* assumes the truth of the facts asserted by plaintiff in its complaint.

eighteen are selected "through a holistic but anonymous review that takes into account all available information." *Id.* ¶¶ 14–15. No applicant is required to provide information for consideration through the holistic consideration process, but those who wish to do so can "indicate their racial or ethnic identity, physical disability status, gender identity, sexual orientation, and socioeconomic status." *Id.* ¶ 16; *see also* Ex. 1 at 5–7 (*Law Review*'s editor-selection policy). Applicants may also submit an expository statement that "describes aspects of their background not fully captured" elsewhere in the application materials. Compl. ¶ 16. Those statements are considered only after the writing competition portion of the applications has been graded. Ex. 1, at 6. In making editor-selection decisions, the *Law Review* "remains strongly committed to a diverse and inclusive membership." Compl. ¶ 15.

As for article selection, the *Law Review*'s student editors are solely responsible for selecting the legal scholarship that the *Law Review* will publish. *Id.* ¶ 8; *see* Ex. 1 at 1 ("Student editors make all editorial and organizational decisions and, together with a professional business staff of three, carry out day-to-day operations."). Much of the scholarship the *Law Review* publishes (*e.g.*, notes, recent case comments, and recent legislative comments) is written by its student editors. Ex. 1, at 2. The articles selected for publication in the *Law Review* are written by "professors, judges, and practitioners," and the *Law Review* also solicits book reviews from "recognized experts." *Id.* FASORP alleges that, in selecting which articles to publish, the *Law Review* "giv[es] preferential treatment to articles written by women or racial minorities." Compl. ¶ 18.

FASORP filed this suit against the *Law Review* (along with several other defendants) on October 6, 2018. Its complaint alleges that the *Law Review*'s editor-selection and article-selection processes violate Title VI, 42 U.S.C. § 2000d, and Title IX, 20 U.S.C. § 1681. Specifically,

FASORP asserts that the *Law Review* violates these statutes by using "race and sex preferences when selecting its members, editors, and articles." Compl. ¶ 34.

To remedy these alleged violations, FASORP requests several forms of relief. *Id.* ¶ 38. *First*, FASORP seeks a declaration that the *Law Review*'s editor- and article-selection policies violate Title VI and Title IX. *Id.* ¶ 38(a). *Second*, FASORP demands an injunction that would require the *Law Review* to enact new article- and editor-selection policies that "disavow" any consideration of diversity. *Id.* ¶ 38(b), (d). *Third*, FASORP demands injunctive relief that would require the *Law Review* to pre-clear its annual editor-selection decisions with this Court and the Secretary of Education. *Id.* ¶ 38(e). *Fourth*, FASORP seeks similar pre-clearance of the *Law Review*'s article-selection policy, which FASORP claims cannot permit student editors even to know an author's name before accepting the author's piece for publication. *Id.* ¶ 38(f).

## STANDARD OF REVIEW

"In opposing a motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1), the plaintiff bears the burden of establishing that the Court has jurisdiction." *United States ex rel. Cunningham v. Millennium Labs., Inc.*, 202 F. Supp. 3d 198, 202 (D. Mass. 2016). To carry its burden, the plaintiff must "establish[] sufficient factual matter to plausibly demonstrate his standing to bring the action." *Hochendoner v. Genzyme Corp.*, 823 F.3d 724, 731 (1st Cir. 2016). "Neither conclusory assertions nor unfounded speculation can supply the necessary heft." *Id.*

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Lemos v. Bank of America*, 132 F. Supp. 3d 261, 263 (D. Mass. 2015) (quoting *Iqbal*, 556 U.S. at 678). "'[F]actual allegations' must be separated from 'conclusory statements in order to analyze whether the former, if taken as true, set forth a plausible, not merely

a conceivable, case for relief.'"  *Id.* (quoting *Juarez v. Select Portfolio Servicing, Inc.*, 708 F.3d

269, 276 (1st Cir. 2013)) (alteration in original).  A court need not "accept every allegation made

by the complainant, no matter how conclusory or generalized."  *Id.* (quoting *United States v. AVX

Corp.*, 962 F.2d 108, 115 (1st Cir. 1992)) (internal quotation marks omitted).  "Dismissal for

failure to state a claim is appropriate when the pleadings fail to set forth 'factual allegations, either

direct or inferential, respecting each material element necessary to sustain recovery under some

actionable legal theory.'"  *Id.* (quoting *Berner v. Delahanty*, 129 F.3d 20, 25 (1st Cir. 1997)).

## ARGUMENT

### I.    FASORP Lacks Associational Standing

To invoke the jurisdiction of the federal courts, a plaintiff must establish Article III

standing.  *Clapper v. Amnesty Int'l, USA*, 568 U.S. 398, 408 (2013).  To do so, a plaintiff must

plead facts that establish the three elements that constitute the "irreducible constitutional minimum

of standing."  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).  Specifically, a plaintiff

must show that it has "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged

conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision."

*Spokeo, Inc v. Robins*, 136 S. Ct. 1540, 1547 (2016).

Because FASORP is an organization, as opposed to an individual, it must establish three

additional elements to have Article III standing.[3]  *First*, its members must have standing to sue in

their own right.  *Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 343 (1977).

---

[3] A plaintiff organization also can try to establish that it has "organizational standing"—
that is, that it would have standing in its own right.  *See, e.g.*, *Sexual Minorities Uganda v. Lively*,
960 F. Supp. 2d 304, 324–25 (D. Mass. 2013); *see also, e.g.*, *OCA-Greater Houston v. Texas*, 867
F.3d 604, 610 (5th Cir. 2017); *Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 919 (D.C. Cir.
2015).  But FASORP is not pursuing this standing theory.  FASORP does not allege that it has
suffered an injury, separate and apart from its members' alleged injuries.  *See* Compl. ¶¶ 22–23
(quoting the requirements for *associational* standing).

*Second*, the interests the association seeks to protect through the litigation must be "germane to the organization's purpose." *Id. Third*, "neither the claim asserted nor the relief requested [should] require[] the participation of individual members in the lawsuit." *Id.*; *see generally United States v. AVX Corp.*, 962 F.2d 108, 116 (1st Cir. 1992).

"The party invoking federal jurisdiction bears the burden" of proving all of these elements. *Lujan*, 504 U.S. at 561. FASORP has not come close to pleading facts sufficient to carry its burden. As a result, this Court lacks subject-matter jurisdiction.

Most obviously, FASORP has not shown that any of its members have standing to sue. Both the Supreme Court and the First Circuit have made clear that an association cannot satisfy this first prong of the *Hunt* test without *specifically identifying* at least one member who would have standing to sue in his or her own right. *See, e.g.*, *Summers*, 555 U.S. at 498 (a plaintiff-organization cannot establish standing without "mak[ing] specific allegations establishing that at least one *identified* member had suffered or would suffer harm" (emphasis added)); *Draper*, 827 F.3d at 3 (to have associational standing, an organization must, "at the very least," submit an affidavit that "names an injured individual"). The First Circuit, moreover, has specifically rejected the idea that an organization should be permitted to proceed past the pleading stage and into discovery before naming at least one injured individual. *See Draper*, 827 F.3d at 3 ("[W]hy the advocacy group would have needed formal discovery to identify which of its own members may have been injured . . . is a mystery the group leaves unsolved."). And for good reason. "Without individual affidavits" or their equivalent, "how is the court to assure itself" that an association truly has any members, or confirm that any one of those members "meet[s] all of the[] criteria" necessary to have standing? *Summers*, 555 U.S. at 499.

FASORP's complaint falls short under this straightforward rule. Although FASORP suggests that the association has some injured members, its complaint fails to identify a single one. Nor has FASORP submitted any affidavits from injured individuals who purport to be members of the association.[4] This omission forecloses this Court from exercising jurisdiction.[5]

## II. FASORP Has Failed To State a Claim Upon Which Relief Can Be Granted

In addition to this jurisdictional problem, FASORP's complaint is deficient on the merits. Under both Title VI and Title IX, a plaintiff must prove three elements in order to be entitled to relief: (1) that the defendant is a recipient of federal funding; and (2) that the plaintiff, because of his or her race (Title VI) or sex (Title IX), has been excluded from participation in, denied benefits of, or subjected to discrimination under (3) a program or activity of the recipient. *See* 20 U.S.C. § 1681; 42 U.S.C. § 2000d; *see also, e.g.*, *Davis ex rel. LaShonda D. v. Monroe County Bd. of Educ.*, 526 U.S. 629, 638–39 (1999) (Title IX); *Comfort ex rel. Neumyer v. Lynn School*, 131 F.

---

[4] FASORP's website, which the association incorporates in paragraph 3 of its complaint, states that "[m]embership in FASORP is strictly confidential and will not be shared with anyone." FASORP, https://fasorp.org/ (last visited Nov. 30, 2018). But neither *Summers* nor *Draper*—nor any other case of which Defendant is aware—allows a plaintiff association to evade the strict member-identification requirement by preserving anonymity.

[5] Not only does FASORP lack associational standing, many of the injuries that it alleges are also deficient as a matter of law *and* under the *Iqbal*/*Twombly* pleading standard. To satisfy the requirements of Article III, an alleged injury may not be "conjectural or hypothetical." *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990). Yet several of FASORP's alleged injuries are precisely that. The "injuries" set forth in paragraphs 26 through 29 of the complaint are both conclusory and rely on the wholly conjectural speculation that students who are selected for the *Law Review* through holistic review are inherently "less capable" editors than students who are selected based on their law school grades or their performance in the writing competition. Equally problematic, several of FASORP's alleged injuries cannot be redressed by the *prospective* injunctive relief it seeks. *See, e.g.*, Compl. ¶ 28 (alleging that alumni suffer from diminished prestige because holistic review has tarnished the reputation of the *Law Review*); *id.* ¶ 29 (alleging that the inability to prove that they earned a position on the *Law Review* through their grades or their writing competition scores, as opposed to through holistic review, injures female and minority alumni's credentials); *Spokeo*, 136 S. Ct. at 1547 (affirming redressability requirement).

Supp. 2d 253, 254, 255 n.4 (D. Mass. 2001) (Title VI); *cf. G.G. ex rel. Grimm v. Gloucester Cty. Sch. Bd.*, 822 F.3d 709, 718 (4th Cir. 2016), *vacated on other grounds,* 137 S. Ct. 1239 (2017) (Title IX).

To survive a 12(b)(6) motion, a Title VI or IX plaintiff must adequately plead *all three* of these elements. *Boston's Children First v. City of Boston*, 62 F. Supp. 2d 247, 260 n.31 (D. Mass. 1999). FASORP's complaint fails to sufficiently allege a single one, and thus must be dismissed.

## A.    FASORP Has Not Alleged That the *Law Review* Receives Federal Funding

Both Title VI and Title IX expressly limit their coverage to "program[s] or activit[ies] *receiving Federal financial assistance*." 42 U.S.C. § 2000d (emphasis added); 20 U.S.C. § 1681(a) (emphasis added).[6] This approach to the statutes makes sense: In essence, Title VI and IX establish a *quid pro quo*, whereby a recipient agrees to abide by certain non-discrimination requirements in exchange for receiving federal funding. *Dep't of Transp. v. Paralyzed Veterans of Am.*, 477 U.S. 597, 605–06 (1986) ("Under the program-specific statutes, Title VI, Title IX, and § 504, Congress enters into an arrangement in the nature of a contract with the recipients of the funds: the recipient's acceptance of the funds triggers coverage under the nondiscrimination provision."). Naturally, only those entities that have actually received federal funding in exchange for promising to abide by the statutes' non-discrimination requirements can be sued for breaking that promise. *See id.*

---

[6] The Department of Justice defines federal financial assistance to include: "(1) Grants and loans of Federal funds, (2) The grant or donation of Federal property and interests in property, (3) The detail of Federal personnel, (4) The sale and lease of, and the permission to use (on other than a casual or transient basis), Federal property or any interest in such property without consideration or at a nominal consideration, or at a consideration which is reduced for the purpose of assisting the recipient, or in recognition of the public interest to be served by such sale or lease to the recipient, and (5) Any Federal agreement, arrangement, or other contract which has as one of its purposes the provision of assistance." 28 C.F.R. § 42.102(c).

FASORP's complaint is silent on the question whether the *Law Review* receives federal funding.  In other words, FASORP's allegations are worse than just "threadbare"—they are entirely absent.  *See Maldonado v. Fontanes*, 568 F.3d 263, 268 (1st Cir. 2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." (quoting *Iqbal*, 556 U.S. at 678)).  And the absence of any such allegation is fatal to FASORP's claim.  Because a plaintiff cannot proceed to the merits of a Title VI or Title IX claim without alleging that the defendant receives federal funding, FASORP's failure to include any such allegation in its complaint mandates this suit's dismissal.

**B.    FASORP Has Not Alleged That the *Law Review* Is a "Program or Activity" Under Title VI or Title IX**

Discrimination is actionable under Title VI and Title IX only when it occurs under a "program or activity" of a federal funding recipient. 20 U.S.C. § 1681(a); 42 U.S.C. § 2000d. FASORP's complaint is entirely silent as to how the *Law Review* qualifies as a "program or activity."  Given that FASORP has named the President and Fellows of Harvard University as a defendant in its complaint, FASORP may be implicitly alleging that the *Law Review* is a "program or activity" of Harvard University.  On this theory, FASORP would need to establish that the *Law Review* is an "operation[]" of Harvard University to make out its claim.  20 U.S.C. § 1687(2); 42 U.S.C. § 2000d-4a(2)(A).

Yet FASORP's complaint does not include any allegations that link the *Law Review* to Harvard University (or any other "college, university, or other postsecondary institution, or a public system of higher education," 20 U.S.C. § 1687(2); 42 U.S.C. § 2000d-4a(2)(A)).  To the contrary, FASORP attaches to its complaint an exhibit contradicting that contention.  That exhibit

expressly states that the *Law Review* is "formally independent of the Harvard Law School."[7]  Ex. 1, at 1; *see also* Secretary of Commonwealth, Corporations Division, *Business Entity Summary: The Harvard Law Review Association*, http://corp.sec.state.ma.us/CorpWeb/CorpSearch/Corp Summary.aspx?FEIN=042104292&SEARCH_TYPE=1 (last visited Dec. 16, 2018) (summary of the Harvard Law Review Association's corporate filings with the Commonwealth of Massachusetts); *Watterson v. Page*, 987 F.2d 1, 3–4 (1st Cir. 1993) (noting that consideration of "official public records" on a motion to dismiss is appropriate and does not convert the motion into one for summary judgment); *Kader v. Sarepta Therapeutics, Inc.*, No. 1:14-cv-14318-ADB, 2016 WL 1337256, at *11 (D. Mass. Apr. 5, 2016) (approving of consideration of a statement on a government website in deciding a motion to dismiss).  According to FASORP's own pleading, then, the *Law Review* is not an "operation[]"—and, thus, not a "program or activity"—of Harvard University.[8]

---

[7] Where, as here, written instruments are provided as exhibits to a pleading, the exhibit "is a part of the pleading for all purposes."  Fed. R. Civ. P. 10(c); *see also Trans-Spec Truck Serv. v. Caterpillar Inc.*, 524 F.3d 315, 321 (1st Cir. 2008) (providing that exhibits "attached to the complaint are properly considered part of the pleading 'for all purposes,' including Rule 12(b)(6)").  Indeed, when "a complaint's factual allegations are expressly linked to—and admittedly dependent upon—a document (the authenticity of which is not challenged), that document effectively merges into the pleadings and the trial court can review it in deciding a motion to dismiss under Rule 12(b)(6)."  *Trans-Spec Truck Serv.*, 524 F.3d at 321.  Moreover, when "a written instrument contradicts allegations in the complaint to which it is attached, the exhibit trumps the allegations."  *Clorox Co. Puerto Rico v. Proctor & Gamble Commercial Co.*, 228 F.3d 24, 32 (1st Cir. 2000) (quoting *N. Ind. Gun & Outdoor Shows, Inc. v. City of South Bend*, 163 F.3d 449, 454 (7th Cir. 1998)).

[8] Even if the *Law Review* were an "operation" of the University, it would not be a proper defendant in this case.  Both the First Circuit and the District Court of Massachusetts have consistently held that Title IX's right of action extends only to educational institutions, and the *Law Review* is not an educational institution.  *See Frazier v. Fairhaven Sch. Comm.*, 276 F.3d 52, 65 (1st Cir. 2002) (Title IX's right of action "extends only to claims against the educational institution itself"); *Lipsett v. University of Puerto Rico*, 864 F.2d 881, 901 (1st Cir. 1988) ("In implying a cause of action under Title IX, the Supreme Court has considered only actions against the educational institution itself." (citing *Cannon v. University of Chicago*, 441 U.S. 677 (1979)));

**C.      FASORP Has Not Advanced a Cognizable Claim That the *Law Review* Discriminates on the Basis of Race or Sex**

Finally, FASORP fails to adequately allege that the *Law Review*'s editor- or article-selection amount to illegal discrimination under Title VI or Title IX.

In *Cohen v. Brown University*, the First Circuit explained that the federal anti-discrimination statutes permit affirmative action. 101 F.3d 155, 170 (1st Cir. 1996) ("Like other anti-discrimination statutory schemes, the Title IX regime *permits* affirmative action."); *cf.* 34 C.F.R. § 106.3(b) ("[A] recipient may take affirmative action to overcome the effects of conditions which resulted in limited participation therein by persons of a particular sex."). Nevertheless, paragraph 12 and Exhibit 3 of the complaint describe the *Law Review* as having an "affirmative action policy." These allegations are inadequate to plead discrimination under binding First Circuit precedent. FASORP cannot state a claim merely by alleging that the *Law Review* employs race- and gender-conscious affirmative action policies.

In all events, the *Law Review*'s alleged editor- and article-selection policies are entirely consistent with Supreme Court precedent. The Supreme Court has generally proceeded as if the anti-discrimination protections set forth in Title VI and IX are coextensive with the protections embodied in the Equal Protection Clause and the Fifth Amendment. *See Grutter v. Bollinger*, 539 U.S. 306, 343 (2003) (quoting *Regents of Univ. of California v. Bakke*, 438 U.S. 265, 287 (1978) (opinion of Powell, J.)). The Supreme Court's many decisions evaluating university admissions policies under the Equal Protection Clause thus help demarcate the line between lawful and

---

*Rinsky v. Trustees of Boston Univ.*, No. 10cv10779-NG, 2010 WL 5437289, at *12 (D. Mass. Dec. 27, 2010) ("[Title IX's] enforcement mechanism includes an implied private right of action, but this private right of action extends only to claims against the educational institution itself.").

unlawful conduct under Title VI and Title IX.[9]  *See Bakke*, 438 U.S. at 287 (opinion of Powell, J.); *see also Grutter*, 539 U.S. at 343; *Fisher v. Univ. of Texas at Austin ("Fisher I")*, 570 U.S. 297 (2013); *Fisher II*, 136 S. Ct. at 2198.  Those cases clarify that an entity may consider race or sex as a factor in its selection process, so long as (1) the entity does not "impose a fixed quota," *Fisher II*, 136 S. Ct. at 2208, or otherwise "assure within its . . . body some specified percentage of a particular group," *Grutter*, 539 U.S. at 329; and (2) the entity's "consideration of race [or sex] is contextual and does not operate as a mechanical plus factor for underrepresented minorities," *Fisher II*, 136 S. Ct. at 2207.

The *Law Review*'s article- and editor-selection policies, as alleged in the complaint and the incorporated exhibits, plainly satisfy these requirements.  FASORP does not allege that the *Law Review* imposes a quota of any sort in selecting articles or editors, nor does it allege that the *Law Review* uses race or sex as a "mechanical plus factor."  Instead, FASORP alleges that the *Law Review* engages in holistic review and considers race and sex contextually.  Compl. ¶¶ 14–17.  According to FASORP's own allegations, the *Law Review* selects eighteen editors through a comprehensive review process "that takes into account all available information."  *Id.* ¶ 15.  Review of applicants is based on their first-year grades and their competition scores, as well as information that the applicants choose to provide regarding their racial or ethnic identity, physical disability status, gender identity, sexual orientation, socioeconomic status, and other aspects of

---

[9] Notably, the Supreme Court has not clarified exactly how its equal-protection precedents apply to *private* universities or organizations.  Nor has it expressly held that the Equal Protection Clause is coextensive with Titles VI and IX, though the Court has said that, like the Equal Protection Clause, Title VI did not "enact[] a purely color-blind scheme."  *Bakke*, 438 U.S. at 284 (opinion of Powell, J.).  Given the remedial nature of Titles VI and IX, and given the *Law Review*'s status as a private organization and its role as an important legal publication, the *Law Review* should receive far greater latitude in exercising its editor-selection discretion to pursue a compelling interest than the public university defendants in cases like *Grutter* and *Fisher*.

their identity or background. *Id.* ¶¶ 15–17.  Thus, taking FASORP's allegations as true, race and sex are one potential factor out of a wide range of factors that are considered during editor selection.  *See id.*  This is exactly the type of holistic consideration that the Supreme Court has repeatedly deemed permissible.

As for article selection, FASORP includes only the solitary allegation that the *Law Review* "giv[es] preferential treatment to articles written by women or racial minorities."  *Id.* ¶ 18.  This conclusory and threadbare allegation cannot satisfy the pleading standard set forth in *Iqbal*.  *See* 556 U.S. at 687.  It provides no indication whatsoever how this so-called preferential treatment for article selection operates—or how it, in turn, violates the law under *Fisher II*, *Grutter*, or *Bakke* (assuming those cases even apply beyond the public-university admissions context).

FASORP, accordingly, has failed to state a claim of discrimination under Title VI or Title IX.

## CONCLUSION

For the foregoing reasons, FASORP's claims should be dismissed.

Dated:  December 17, 2018

/s/ Donald B. Verrilli, Jr.
Donald B. Verrilli, Jr. (*pro hac vice*)
Chad I. Golder (*pro hac vice*)
Sarah G. Boyce (*pro hac vice*)
Dila Mignouna (*pro hac vice*)
MUNGER, TOLLES & OLSON LLP
1155 F Street N.W., Seventh Floor
Washington, DC 20004-1357
(202) 220-1100

Ryan P. McManus
Patrick M. Moore
HEMENWAY & BARNES
75 State Street
Boston, MA 02109
(617) 557-9705

*Attorneys for Defendant Harvard Law Review*