**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

|  |  |  |
|---|---|---|
| FACULTY, ALUMNI, AND STUDENTS OPPOSED TO RACIAL PREFERENCES; COALITION FOR MERITOCRACY AT UNIVERSITIES, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | C.A. No. 1:18-cv-12105-LTS |
| v. | ) ) | |
| HARVARD LAW REVIEW ASSOCIATION; PRESIDENT AND FELLOWS OF HARVARD COLLEGE; BETSY DeVOS, IN HER OFFICIAL CAPACITY AS U.S. SECRETARY OF EDUCATION; UNITED STATES OF AMERICA, | ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

---

**MEMORANDUM IN SUPPORT OF PRESIDENT AND FELLOWS OF HARVARD
COLLEGE'S MOTION TO DISMISS THE AMENDED COMPLAINT
UNDER RULES 12(b)(6) AND 12(b)(1)**

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ......................................................................................................... ii

INTRODUCTION ......................................................................................................................... 1

LEGAL STANDARD.................................................................................................................... 3

ARGUMENT ................................................................................................................................. 4

I.    THE COMPLAINT'S ALLEGATIONS REGARDING THE LAW REVIEW FAIL TO STATE A
CLAIM BECAUSE THE LAW REVIEW DOES NOT RECEIVE FEDERAL FUNDS AND IS NOT A
"PROGRAM OR ACTIVITY" OF HARVARD .............................................................................. 4

II.   THE COMPLAINT PLEADS NO FACTUAL BASIS FOR ITS DISCRIMINATION CLAIMS ................ 7

III.  PLAINTIFFS' CLAIM OF RACE DISCRIMINATION IN HIRING IS NOT COGNIZABLE UNDER
TITLE VI ................................................................................................................................ 9

IV.  FASORP AND CMU LACK STANDING TO BRING THIS ACTION ......................................... 10

     A.    The Complaint Fails To Identify Members Of The Plaintiff Organizations
Who Have Suffered Any Of The Alleged Forms Of Discrimination ................... 11

     B.    Faculty And Alumni Members Do Not Have Standing To Challenge Alleged
Discrimination Against Students .......................................................................... 13

     C.    The Complaint Fails To Establish That Either FASORP Or CMU Genuinely
Represents Its Members ........................................................................................ 16

CONCLUSION............................................................................................................................. 19

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Allen v. Wright*, 468 U.S. 737 (1984) ........................................................................................16

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .................................................................2, 3, 5, 8, 12

*Automobile Workers v. Brock*, 477 U.S. 274 (1986) ...................................................18

*Barker v. Conroy*, 282 F. Supp. 3d 346 (D.D.C. 2017) ...................................................15

*Becker v. FEC*, 112 F. Supp. 2d 172 (D. Mass. 2000)......................................................16

*Beddall v. State Street Bank & Trust Co.*, 137 F.3d 12 (1st Cir. 1998)...........................6

*Camel Hair & Cashmere Institute of America, Inc. v. Associated Dry Goods Corp.*, 799 F.2d 6 (1st Cir. 1986)............................................................................16

*Cannon v. University of Chicago*, 441 U.S. 677 (1979) ....................................................4

*Clapper v. Amnesty International USA*, 568 U.S. 398 (2013)......................................13

*Consolidated Rail Corp. v. Darrone*, 465 U.S. 624 (1984) ............................................9

*Davis v. Monroe County Board of Education*, 526 U.S. 629 (1999)...............................6

*Diamond v. Charles*, 476 U.S. 54 (1986) ......................................................................19

*Doe v. Town of Stoughton*, 917 F. Supp. 2d 160 (D. Mass. 2013) .................................4

*Douglas v. Brookville Area School District*, 836 F. Supp. 2d 329 (W.D. Pa. 2011).......................7

*Draper v. Healey*, 827 F.3d 1 (1st Cir. 2016) ..........................................................11, 12

*Fisher v. University of Texas at Austin*, 136 S. Ct. 2198 (2016) ....................................9

*Flores-Silva v. McClintock-Hernandez*, 710 F.3d 1 (1st Cir. 2013)................................3

*Foley v. Wells Fargo Bank, N.A.*, 772 F.3d 63 (1st Cir. 2014)........................................3

*Gebser v. Lago Vista Independent School District*, 524 U.S. 274 (1998) ..................4, 7

*Grutter v. Bollinger*, 539 U.S. 306 (2003) .....................................................................9

*Gustavsen v. Alcon Laboratories, Inc.*, 903 F.3d 1 (1st Cir. 2018) ..............................12

*Hunt v. Washington State Apple Advertising Commission*, 432 U.S. 333 (1977) .........10

*Johnson v. Transportation Agency, Santa Clara County*, 480 U.S. 616 (1987)............................10

*Joseph v. Wentworth Institute of Technology*, 120 F. Supp. 2d 134 (D. Mass. 2000) ...................................................................................................................................9, 10

*Katz v. Pershing, LLC*, 672 F.3d 64 (1st Cir. 2012) .......................................................................4

*Kowalski v. Tesmer*, 543 U.S. 125 (2004) ...................................................................................14

*Lam v. Curators of the University of Missouri at Kansas City Dental School*, 122 F.3d 654 (8th Cir. 1997) ...........................................................................................6

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ............................................................11, 15

*Menard v. CSX Transportation, Inc.*, 698 F.3d 40 (1st Cir. 2012).................................................8

*NAACP v. State of Alabama ex rel. Patterson*, 357 U.S. 449 (1958) ..........................................17

*NCAA v. Smith*, 525 U.S. 459 (1999)............................................................................................5

*O'Connor v. Davis*, 126 F.3d 112 (2d Cir. 1997)..........................................................................6

*Package Shop, Inc. v. Anheuser-Busch, Inc.*, 1984 WL 6618 (D.N.J. Sept. 25, 1984) ...........................................................................................................................17

*Playboy Enterprises, Inc. v. Public Service Commission of Puerto Rico*, 906 F.2d 25 (1st Cir. 1990)..............................................................................................17

*Pollard v. Georgetown School District*, 132 F. Supp. 3d 208 (D. Mass. 2015) ............................4

*Regents of University of Michigan v. Ewing*, 474 U.S. 214 (1985)..............................................16

*Students for Fair Admissions, Inc. v. President & Fellows of Harvard College*, 261 F. Supp. 3d 99 (D. Mass. 2017) ...............................................................................17

*Summers v. Earth Island Institute*, 555 U.S. 488 (2009) ......................................................11, 13

*United States Department of Transportation v. Paralyzed Veterans of America*, 477 U.S. 597 (1986)..........................................................................................................5

*United States v. AVX Corp.*, 962 F.2d 108 (1st Cir. 1992) ............................................................4

*Valley Forge Christian College v. Americans United for Separation of Church & State*, 454 U.S. 464 (1982)................................................................................................19

*Warth v. Seldin*, 422 U.S. 490 (1975) .........................................................................................16

*Washington Legal Foundation v. Leavitt*, 477 F. Supp. 2d 202 (D.D.C. 2007) ...............11, 17, 18

## STATUTES, RULES, AND REGULATIONS

20 U.S.C.
    § 1681...............................................................................................................1, 4
    § 1687...............................................................................................................2, 6

42 U.S.C.
    § 2000d............................................................................................................1, 4
    § 2000d-3....................................................................................................2, 9, 10
    § 2000d-4a.......................................................................................................2, 6
    § 2000e-5............................................................................................................10

Fed. R. Civ. P.
    Rule 12................................................................................................................5
    Rule 23..............................................................................................................17

34 C.F.R.
    § 100.13............................................................................................................2, 6
    § 106.11............................................................................................................2, 5

## OTHER AUTHORITIES

*Federalist Society Teleforum: Faculty, Alumni, and Students Opposed to Racial*
    *Preferences Lawsuit Against Harvard and New York University Law*
    *Reviews* (Dec. 12, 2018), http://tinyurl.com/y45a23tc .......................................8

## INTRODUCTION

Despite having the opportunity to amend their pleading in light of three motions to dismiss that identified fundamental flaws in their original complaint, Plaintiffs Faculty, Alumni, and Students Opposed to Racial Preferences (FASORP) and Coalition for Meritocracy at Universities (CMU) have done virtually nothing—and certainly nothing meaningful—to remedy those flaws.  Their Complaint remains devoid of factual support for its conclusory and baseless allegations, including that Harvard Law Review editors chosen through a process that considers diversity are "less capable students" (¶ 30), "dilute[] the quality" of the Law Review membership (¶ 31), and "taint" (¶ 35) and "diminish the prestige of the law-review credential" (¶ 32).[1]  The Complaint continues to fail to identify even a single member of the plaintiff organizations who claims to have been injured by any of the three alleged forms of discrimination—by the Law Review in selecting its editors, by the Law Review in selecting articles for publication, or by Harvard Law School in faculty hiring.  And Plaintiffs have done nothing more to establish that they should be allowed to stand in their members' shoes to invoke the powers of the federal courts.  The Court should dismiss this action with prejudice for several independent reasons.

*First*, the Complaint's allegations concerning the Law Review fail to state a claim because the Law Review is not a "program or activity or activity receiving Federal financial assistance," as required to support liability under Title VI (42 U.S.C. § 2000d) or Title IX (20 U.S.C. § 1681).  The Complaint alleges (¶ 50) that the Law Review somehow benefits from the federal funding received by the Law School and the University and that the Law School provides certain forms of assistance to the Law Review.  But incidental beneficiaries of federal funding— as opposed to *recipients* of funding—are not covered by the statutes, and Plaintiffs' allegations

---

[1]     For simplicity, the First Amended Complaint is referred to as "the Complaint."

concerning the relationship between the Law Review and the Law School (even if proven) fail to establish that the Law Review is operated by the Law School, as would be required to bring the Law Review within the ambit of those statutes (42 U.S.C. § 2000d-4a; 20 U.S.C. § 1687; 34 C.F.R. §§ 100.13(g), 106.11).  Indeed, the documents Plaintiffs attached to the Complaint establish that the Law Review operates independently of the Law School.  The activities of the Law Review therefore provide no basis for liability under Title VI or Title IX.

*Second*, the Complaint pleads no factual basis for its claims that the Law Review discriminates in the selection of articles and that the Law School discriminates in the hiring of faculty.  The Complaint makes those allegations in a wholly conclusory manner, failing to plead *any* facts in support of the claim (much less facts that, if true, would establish the requisite elements).  As for the Law Review's consideration of race and sex among many factors in the selection of editors, the Complaint fails to allege facts from which the Court could conclude that the asserted practice is actually unlawful.  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  This Complaint is exactly the sort of "[t]hreadbare" pleading, "supported by mere conclusory statements," that does "not suffice" to "unlock the doors of discovery."  *Id.* at 678-679.

*Third*, with respect to the allegation of racial discrimination in the Law School's faculty hiring, the Complaint fails for the additional reason that Title VI expressly does not apply to employment practices, "except where a primary objective of the Federal financial assistance is to provide employment."  42 U.S.C. § 2000d-3.  The Complaint does not allege that the Law School or the University receives federal funds "a primary objective of" which "is to provide employment."

*Finally*, this action fails for the further, independent reason that FASORP and CMU lack standing.  The Complaint identifies no member of either organization who has suffered any of the three alleged forms of discrimination, as is necessary for the organizations to have standing to sue.  In addition, the Complaint's allegations that Law Review alumni and prospective authors are somehow harmed by the allegedly discriminatory selection of Law Review *editors* run afoul of the third-party standing doctrine and fail to establish the elements of constitutional standing (injury in fact, causation, and redressability).  And Plaintiffs fail to show they are genuine membership organizations that represent the interests of their members in a manner sufficient to invoke the jurisdiction of the federal courts.

This is an extraordinary Complaint, one that implicates core First Amendment interests (*see* Compl. ¶ 59(d), (e), (f)), making it all the more imperative to enforce the limits of Article III jurisdiction and of the implied causes of action created by Title VI and Title IX.  Plaintiffs' allegations fall far short of those requirements.  The Complaint should be dismissed, in its entirety, without leave to amend.

## LEGAL STANDARD

A complaint's factual allegations must set forth "a plausible claim upon which relief may be granted," or it cannot survive.  *Foley v. Wells Fargo Bank, N.A.*, 772 F.3d 63, 71 (1st Cir. 2014).  A claim is plausible only "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to escape dismissal.  *Id.*; *see Flores-Silva v. McClintock-Hernandez*, 710 F.3d 1, 4 (1st Cir. 2013).

Where a plaintiff lacks Article III standing, its claims must be dismissed for want of

subject-matter jurisdiction. A complaint "must set forth reasonably definite factual allegations, either direct or inferential, regarding each material element needed to sustain standing." *United States v. AVX Corp.*, 962 F.2d 108, 115 (1st Cir. 1992). The standing determination is "claim-specific," meaning that a plaintiff "must have standing to bring each and every claim that [he or] she asserts." *Katz v. Pershing, LLC*, 672 F.3d 64, 71 (1st Cir. 2012).

## ARGUMENT

### I.  THE COMPLAINT'S ALLEGATIONS REGARDING THE LAW REVIEW FAIL TO STATE A CLAIM BECAUSE THE LAW REVIEW DOES NOT RECEIVE FEDERAL FUNDS AND IS NOT A "PROGRAM OR ACTIVITY" OF HARVARD

Title VI and Title IX operate in tandem to forbid discrimination on the basis of race or sex in any education "program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d (Title VI; race); 20 U.S.C. § 1681(a) (Title IX; sex).[2] Both statutes condition "an offer of federal funding on a promise by the recipient not to discriminate, in what amounts essentially to a contract between the Government and the recipient of funds." *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 286 (1998). The statutes therefore apply only to entities that receive federal financial assistance; alleged discrimination by an entity that does not receive federal funds does not implicate either law. *See Pollard v. Georgetown Sch. Dist.*, 132 F. Supp. 3d 208, 229-230 (D. Mass. 2015); *Doe v. Town of Stoughton*, 917 F. Supp. 2d 160, 165 (D. Mass. 2013).

Plaintiffs do not adequately plead either that the Law Review receives federal funding or that it is a "program or activity" of the Law School or University, both of which do receive federal funding. The Complaint asserts those propositions (¶ 49) in conclusory fashion, but "the tenet that a court must accept as true all of the allegations contained in a complaint is

---

[2]     The statutes are generally interpreted consistently. "Title IX was patterned after Title VI," and "[t]he drafters of Title IX explicitly assumed that it would be interpreted and applied as Title VI had been." *Cannon v. University of Chicago*, 441 U.S. 677, 694-696 (1979).

inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Nor is it sufficient under Rule 12(b)(6) for a plaintiff to offer a "'formulaic recitation of the elements of a cause of action.'" *Id.* Instead, the Complaint must plead factual allegations sufficient to plausibly establish that the Law Review itself either receives federal funding or is a "program or activity" of the federally funded Law School or University—which it wholly fails to do.

*First*, the Complaint does not allege *any* facts to support the assertion that the Law Review itself receives federal funding. It does not point, for example, to grants that it claims the Law Review has received or funded programs in which it claims the Law Review participates.

*Second*, to the extent the Complaint tries to suggest that the Law Review *benefits* from the federal funds received by the Law School and the University—for example, by alleging (¶ 50) that the Law Review "draws upon" the Law School's and the University's "resources"— those assertions, even if proven, are legally insufficient to subject the Law Review to Title VI and Title IX. "[E]ntities that only benefit economically from federal assistance" do not "*receiv[e]*" federal funds within the meaning of Title VI or Title IX and are therefore not covered by those statutes. *NCAA v. Smith*, 525 U.S. 459, 468 (1999) (emphasis added); *see id.* at 465-469; *U.S. Dep't of Transp. v. Paralyzed Veterans of Am.*, 477 U.S. 597, 606-607 (1986).

*Third*, the Complaint alleges that the Law Review—a separately incorporated, entirely self-governing entity—interacts in various ways with the Law School or the University (¶ 50), in an apparent effort to show that the Law Review is covered by Title VI and Title IX by virtue of *those* entities' federal funding. But those allegations do not support a conclusion that the Law Review is a "program or activity" of the Law School or the University, so that Harvard can be answerable under those laws for what the Law Review does. The Law Review is not a "program or activity" of Harvard unless it is "operated by" Harvard. 34 C.F.R. § 106.11 (Title IX); *see*

*also* 42 U.S.C. § 2000d-4a (Title VI) (defining "program or activity" as "the operations of" a college or university); 20 U.S.C. § 1687 (Title IX) (same); 34 C.F.R. § 100.13(g) (Title VI) (same). And the Complaint's allegations do not remotely establish that proposition. At most, they suggest that Harvard and the Law Review engage in certain forms of cooperation or assistance, much as other independent entities might do. That does not support vicarious liability under Title VI or Title IX. *See, e.g.*, *Davis v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 645 (1999) (Title IX's bar on harassment "'under' 'the operations of' a funding recipient," identical to that of Title VI, means "the harassment must take place in a context subject to the [recipient's] *control*" (emphasis added)); *cf. Lam v. Curators of the Univ. of Mo. at Kan. City Dental Sch.*, 122 F.3d 654, 656 (8th Cir. 1997) (independent dental clinic operated by a clinic instructor at a university was not controlled by the university as required to establish that it was a "'program or activity'" for Title IX purposes); *O'Connor v. Davis*, 126 F.3d 112, 118 (2d Cir. 1997) (internship program at unaffiliated hospital was not an education program or activity operated by a university).

Indeed, documents attached to the Complaint—which the Court can and should consider, *see, e.g.*, *Beddall v. State St. Bank & Tr. Co.*, 137 F.3d 12, 17 (1st Cir. 1998)—make clear that the Law Review is *not* operated by the Law School or the University. They show that the Law Review "is a student-run organization," "independent of the … Law School," whose "[s]tudent editors make all [its] editorial and organizational decisions[.]" Compl. Ex. 1 at 1-2. Nor does the Complaint allege that the Law School or the University caused the Law Review to adopt the challenged policies. Again, the Complaint shows the opposite. Compl. Ex. 3 at 1.[3]

---

[3]     FASORP complains that Harvard Law School has a self-imposed Non-Discrimination Policy that it "is not enforcing … against the Harvard Law Review." Compl. ¶ 22. But Title VI

Because Plaintiffs allege no facts from which the Court could infer that the Law Review is federally funded or that it is a "program or activity" of the Law School or the University, the Complaint should be dismissed in its entirety.

## II.    THE COMPLAINT PLEADS NO FACTUAL BASIS FOR ITS DISCRIMINATION CLAIMS

The Complaint also fails in its entirety for the independent reason that it does not plead a sufficient factual basis for any of its claims.  The Complaint pleads no facts to support its bare accusations of discrimination in article selection and faculty hiring.  Nor does it plead facts from which the Court could infer that the Law Review violates the law in considering race and gender (among many factors) in the selection of editors.

In a single conclusory sentence (¶ 19), the Complaint alleges that the Law Review "discriminates on account of race and sex when selecting articles for publication, by giving preferential treatment to articles written by women or racial minorities."  In another conclusory sentence (¶ 23), it alleges that the Law School, "along with nearly every law school in the United States, discriminates on account of race and sex when hiring its faculty, by discriminating in favor of female or minority faculty candidates and against white men."  The Complaint pleads *no* factual support for either allegation.  It does not cite any Law Review, Law School, or University policy, or even any statement by any individual with knowledge of the article selection or faculty hiring processes, to support those allegations.  It does not present factual allegations from the experience of a single one of its members from which a claim of discrimination might be supported.  Nor does it even offer allegations on information and belief—perhaps because the

---

and Title IX do not create a federal cause of action to require a private party to enforce an internal non-discrimination policy it has voluntarily adopted.  *See, e.g.*, *Douglas v. Brookville Area Sch. Dist.*, 836 F. Supp. 2d 329, 348 n.15 (W.D. Pa. 2011) (failure to properly implement school's internal policy does not constitute a violation of Title IX) (citing *Gebser*, 524 U.S. at 291-292).

First Circuit has admonished that "'[i]nformation and belief' does not mean pure speculation," *Menard v. CSX Transp., Inc.*, 698 F.3d 40, 44 (1st Cir. 2012).[4]

The Supreme Court has made clear that such "'naked assertion[s]' devoid of 'further factual enhancement'" are not enough. *Iqbal*, 556 U.S. at 678. Rather, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). Absent supporting facts, the Court need not "accept as true" the complaint's "[t]hreadbare recitals of the elements of a cause of action." *Id.* Because the Complaint pleads no factual support for its claims of discrimination in the Law Review's selection of articles and the Law School's hiring of faculty, those claims should be dismissed.

The Complaint similarly fails to plead facts sufficient to state a claim that the Law Review's consideration of race and sex (among other factors) in selecting student editors is unlawful. The Complaint cites (¶ 14)—and attaches (Ex. 1)—the Law Review's description of its selection process. But merely pleading that the Law Review considers race and sex in

---

[4]     Plaintiffs' barebones claim relating to faculty hiring appears to be just such "pure speculation," as highlighted by the fact that Plaintiffs' counsel acknowledged in reference to this litigation that discrimination in faculty hiring would be hard to establish "without a smoking gun" and that he would bring such a claim only if he had evidence from "a mole" who was "actually on the faculty" and had kept "incriminating emails" or "secretly record[ed] faculty meetings." *Federalist Society Teleforum: Faculty, Alumni, and Students Opposed to Racial Preferences Lawsuit Against Harvard and New York University Law Reviews* (Dec. 12, 2018), http://tinyurl.com/y45a23tc. Plaintiffs' decision to bring the claim notwithstanding this apparent lack of evidence may be explained by the suggestion later in the same teleconference that the claim could justify discovery into the Law School's hiring of Senator Elizabeth Warren; during the same discussion, Plaintiffs' counsel raised the possibility of "dig[ging] into … how Barack Obama got onto the *Law Review*." *Id.* It would be hard to imagine a more transparent example of a plaintiff bringing a baseless claim in an effort to engage in a discovery fishing expedition.

selecting editors would not establish a violation of Title VI or Title IX, even if the Law Review were subject to Title VI or Title IX.  The Complaint must plead facts that, if true, would support a claim that any such consideration is *unlawful*.  It fails to do so, as discussed more fully in the Law Review's motion to dismiss (at 15-19).  The Supreme Court has repeatedly sanctioned the consideration of race in the educational context as long as certain requirements are satisfied.  *See generally Fisher v. University of Tex. at Austin*, 136 S. Ct. 2198 (2016) (undergraduate); *Grutter v. Bollinger*, 539 U.S. 306 (2003) (law school).  The Complaint certainly does not allege anything to suggest the Law Review's editor-selection process fails to satisfy those requirements—as would be required for the allegations, if proven, to establish a violation of Title VI and Title IX.

## III.   PLAINTIFFS' CLAIM OF RACE DISCRIMINATION IN HIRING IS NOT COGNIZABLE UNDER TITLE VI

The claim that the Law School discriminates on the basis of race in faculty hiring also fails because, except in limited circumstances not present here, Title VI does not cover employment practices.  The statute says so on its face:  "Nothing contained in [Title VI] shall be construed to authorize action … by any department or agency with respect to any employment practice of any employer, employment agency, or labor organization except where a primary objective of the Federal financial assistance is to provide employment."  42 U.S.C. § 2000d-3.[5] Congress enacted that provision to avoid the "concern that the receipt of any form of financial assistance might render an employer subject to the commands of Title VI rather than Title VII."

---

[5]   "Even though the words of [§ 2000d-3] only expressly curtail the actions of 'any department or agency,' its prohibitions have been interpreted as applying to private actions." *Joseph v. Wentworth Inst. of Tech.*, 120 F. Supp. 2d 134, 138 (D. Mass. 2000) (citing *Consolidated Rail Corp. v. Darrone*, 465 U.S. 624, 632-633 (1984)).

*Johnson v. Transportation Agency, Santa Clara Cty.*, 480 U.S. 616, 628 n.6 (1987).[6]

The Complaint does not allege—nor could it—that "a primary objective of the Federal financial assistance" received by Harvard "is to provide employment," 42 U.S.C. § 2000d-3. The claim that the Law School considers race in faculty hiring should therefore be dismissed for this additional reason. *See, e.g., Joseph v. Wentworth Inst. of Tech.*, 120 F. Supp. 2d 134, 138-139 (D. Mass. 2000) (granting summary judgment in favor of university where plaintiff had "not alleged … that a primary objective of the federal financial assistance received by [defendant was] to provide employment," and had "failed to provide any evidence to support the unlikely proposition that the aid which [defendant], an educational institution, received from the federal government was designed to create jobs and not to aid education").

## IV.    FASORP AND CMU LACK STANDING TO BRING THIS ACTION

Finally, the Complaint fails for the independent reason that the Plaintiffs lack standing. A plaintiff relying on a theory of associational standing must establish that "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to [its] purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 343 (1977).  It must also establish that it is a genuine membership organization—*i.e.*, that it is truly answerable to and supported by its members, so that it can

---

[6]    Congress's action to circumscribe the application of Title VI to funded entities' employment practices is important, because the Title VII framework differs from Title VI's in important ways.  A person who claims to have suffered employment discrimination actionable under Title VII must first pursue an administrative complaint before the Equal Employment Opportunity Commission (EEOC), within 180 days of the alleged discrimination; he may bring a lawsuit only if the EEOC has authorized him to do so or has not acted on his complaint.  42 U.S.C. § 2000e-5(e)(1), (f)(1).  There is no reason to believe any of Plaintiffs' members has satisfied those prerequisites, which may be why Plaintiffs are trying to circumvent them by attempting to bring employment-related claims under Title VI.

properly stand in their shoes to invoke federal jurisdiction.  *See, e.g.*, *Washington Legal Found. v. Leavitt*, 477 F. Supp. 2d 202, 210 (D.D.C. 2007).  Plaintiffs bear the burden of establishing their standing.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).

FASORP and CMU cannot carry that burden for three independent reasons.  *First*, the Complaint fails to identify any member of either organization who has suffered or reasonably expects he will imminently suffer any of the three alleged forms of discrimination.  *Second*, many of the harms alleged in the Complaint as grounds for standing run afoul of the third-party standing doctrine and do not establish the constitutional requirements of injury in fact, causation, and redressability.  *Third*, FASORP and CMU plead no facts sufficient to show that they are genuine membership organizations that reflect their members' interests and thus qualify to represent their members in federal court.

### A.    The Complaint Fails To Identify Members Of The Plaintiff Organizations Who Have Suffered Any Of The Alleged Forms Of Discrimination

To establish associational standing, "plaintiff-organizations" must "make specific allegations establishing that at least one identified member ha[s] suffered or [will] suffer harm." *Summers v. Earth Island Inst.*, 555 U.S. 488, 498 (2009); *see also, e.g.*, *Draper v. Healey*, 827 F.3d 1, 3 (1st Cir. 2016) (Souter, J.) ("[T]he association must, at the very least, 'identify [a] member[] who ha[s] suffered the requisite harm.'" (alterations in original)).  The motions to dismiss the original complaint placed Plaintiffs on notice of the fact that they had failed to do so, but the current Complaint—like the original complaint—does not identify any alleged act of discrimination against any specific individual.

The Complaint does not identify a single Law School student who plans to apply to the Law Review and can explain why he would be disadvantaged by the Law Review's editor-selection policies.  The Complaint alleges in conclusory fashion (¶ 38) that Plaintiffs' members

include "current students at Harvard Law School who intend to apply for membership on the"

Law Review.  But it does not "identify" which of Plaintiffs' members has supposedly "suffered

the requisite harm," *Draper*, 827 F.3d at 3 (internal quotation marks omitted); it simply asserts

the existence of some unidentified member.

That is not enough.  Standing, like any other element of a cause of action, must be

pleaded with the specificity and plausibility required by Rule 8.  *Gustavsen v. Alcon Labs., Inc.*,

903 F.3d 1, 7 (1st Cir. 2018).  Plaintiffs' "[t]hreadbare recitals," "supported by mere conclusory

statements," are no more sufficient to plead standing than to plead other elements of a claim.

*Iqbal*, 556 U.S. at 678.  Indeed, the First Circuit has explained that "where standing is at issue,

*heightened* specificity is obligatory at the pleading stage." *Draper*, 827 F.3d at 3 (emphasis

added; internal quotation marks omitted).  The Complaint flouts that requirement, yet again

seeking to "unlock the doors of discovery" with no adequate basis.  *Iqbal*, 556 U.S. at 678-679.

Plaintiffs' allegations of discrimination in article selection are equally deficient.  The

Complaint does not identify a single author who imminently plans to submit an article to the Law

Review and can explain why he would be disadvantaged by the Law Review's article-selection

practices (whatever they may be).  As with the editor-selection claim, the Complaint simply

alleges in conclusory terms (¶ 39) that Plaintiffs' members include some unidentified people who

fit that description.  Again, that is not enough.

Finally, as to the claim of discrimination in the Law School's faculty hiring, the

Complaint somehow manages to say even less.  In a too-clever-by-half attempt at sufficient

pleading, it states that "[a]t least one member of FASORP, and at least one member of CMU,

have sought and applied for entry-level or lateral teaching positions at Harvard Law School and

intend to do so again in the future, ***or*** remain potential candidates for visiting professorships and

*lateral faculty appointments without any need to formally apply*, and … face or will face discrimination on account of their race and sex[.]"  Compl. ¶ 42 (emphasis added).  In other words, not only does the Complaint fail to identify a single member who imminently intends to apply for a Law School faculty position and can explain why he would be disadvantaged by the hiring process—it fails even to say whether Plaintiffs' members intend to apply or simply hope to receive a visiting or lateral appointment without applying.  The latter category would introduce a novel concept of passive standing under which hundreds if not thousands of legal academics would suffer an Article III injury simply by (1) engaging in their profession and (2) not being solicited by the Law School for employment—on the theory that, but for the Law School's alleged hiring practices, the phone *might* someday ring with an offer of employment. That theory runs contrary to the Supreme Court's repeated holdings "that 'threatened injury must be *certainly impending* to constitute injury in fact,' and that '[a]llegations of *possible* future injury' are not sufficient."  *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013).  The Complaint thus falls well short of the requirement to "make specific allegations establishing that at least one identified member ha[s] suffered or [will] suffer harm."  *Summers*, 555 U.S. at 498.

### B.   Faculty And Alumni Members Do Not Have Standing To Challenge Alleged Discrimination Against Students

Plaintiffs also assert standing to challenge the Law Review's editor-selection policies based on supposed injuries to people *other than* Law School students—people who are far too removed from the alleged discrimination to satisfy the constitutional predicates for standing. The Complaint alleges, for example, that faculty members of FASORP or CMU are injured by the Law Review's editor-selection policies because their articles "are judged by less capable students," and that members whose articles are accepted are injured because the Law Review's editor-selection policies "dilute[] the quality of the students who edit an author's manuscript."

Compl. ¶¶ 30-31.  And the Complaint alleges that alumni members of FASORP or CMU are injured by the Law Review's editor-selection policies because those policies "diminish the prestige of the law-review credential," and that "female or minority alumni … suffer an additional" injury because "their law-review membership is now viewed with suspicion."  *Id.* ¶¶ 32-33.  For several reasons, however, Plaintiffs' faculty and alumni members lack individual standing to challenge the Law Review's editor-selection practices, so Plaintiffs cannot base associational standing on those members' individual claims.

*First*, these theories all run afoul of the prudential third-party standing doctrine, which generally prevents a party from bringing suit to vindicate "'the legal rights or interests of third parties.'"  *Kowalski v. Tesmer*, 543 U.S. 125, 129 (2004).  The doctrine "assumes that the party with the right has the appropriate incentive to challenge (or not challenge)" actions that allegedly violate the right, and it "represents a 'healthy concern that if the claim is brought by someone other than one'" who actually possesses the right in question, "the courts might be 'called upon to decide abstract questions of wide public significance even though … judicial intervention may be unnecessary to protect individual rights.'"  *Id.*  Here, Plaintiffs' editor-selection claim invokes the legal rights of the students who (according to the Complaint) suffer discrimination on the basis of race and sex—not any rights of faculty or alumni.  Nor is there any basis to conclude that the students suffer a "'hindrance' to the … ability to protect [their] own interests," or that faculty or alumni have a sufficiently "'close' relationship" with them to sue on their behalf— both of which would be necessary to overcome the bar on third-party standing, *id.* at 130.

*Second*, to the extent Plaintiffs assert that their faculty and alumni members' *own* interests (as opposed to the students' interests) are being harmed by the Law Review's alleged discrimination in the selection of editors, that theory fails because the faculty and alumni cannot

- 14 -

demonstrate the predicates of Article III standing: (1) "an injury in fact" that (2) is caused by

"the conduct complained of" and (3) would "be redressed by a favorable decision," *Lujan*, 504

U.S. at 560-561 (internal quotation marks omitted).

    To establish a constitutionally sufficient "injury in fact," Plaintiffs must sufficiently

allege "an invasion of a legally protected interest which is (a) concrete and particularized, and

(b) actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (citations and

internal quotation marks omitted).  Plaintiffs' allegations that faculty and alumni members have

been injured by the Law Review's editor-selection policies fall short in several respects.

    For one, the alleged injuries are not "concrete and particularized" and "actual or

imminent."  As to faculty, the Complaint pleads no factual basis for its assertion that editors

chosen in part through a process that considers racial and gender diversity (among other factors)

would be "less capable" in selecting among articles submitted for publication (¶ 30) or that their

editing of accepted articles would be "dilute[d]" in "quality" (¶ 31).  Nor does the Complaint

plead a "concrete and particularized" and "actual or imminent" injury to alumni, as a result of the

supposed diminution in the "prestige of the law-review credential" (¶ 32) or the supposed

"suspicion" with which the Law Review experience of "female or minority alumni" is now

viewed (¶ 33).  The Complaint fails to explain why alumni have reason to believe they have

suffered those effects; much less does it plead the supposed harms with sufficient specificity and

plausibility.  *See, e.g.*, *Barker v. Conroy*, 282 F. Supp. 3d 346, 357-358 (D.D.C. 2017) (atheist

who claimed "he was denied the 'prestige and status' of having served as guest chaplain" in the

House of Representatives had not alleged a "sufficiently 'concrete and particularized'" injury).

    Plaintiffs also have not pleaded that any of the alleged injuries to faculty or alumni were

*caused by* the Law Review's challenged editor-selection practices or could be *redressed* by the

- 15 -

relief sought.  Where a plaintiff complains about action directed at someone else (here, Law School students), it is "substantially more difficult … to establish that, in fact, the asserted injury was the consequence of the defendants' asserted actions, or that prospective relief will remove the harm." *Warth v. Seldin*, 422 U.S. 490, 505 (1975).  This case proves the point.  Even if Plaintiffs had sufficiently alleged a diminution in the quality of the Law Review's article selection or editing, the Complaint does not explain why a board of editors chosen solely by grades or the writing competition would be more "capable" of selecting among articles or would provide higher-quality editing.  Indeed, the Complaint does not explain how a court could determine whether the selection or editing of articles is better or worse under the Law Review's current practices than they otherwise would be.  *Cf. Regents of Univ. of Mich. v. Ewing*, 474 U.S. 214, 225 (1985) ("Considerations of profound importance counsel restrained judicial review of the substance of academic decisions.").  Nor does the Complaint explain how the challenged editor-selection policies would cause a diminution in the prestige of the Law Review credential or how any such diminution of prestige could be redressed by the forward-looking relief that Plaintiffs seek.  This is exactly the sort of "attenuated" and "speculative" "line of causation" that cannot support Article III standing.  *Becker v. FEC*, 112 F. Supp. 2d 172, 177 (D. Mass. 2000) (citing *Allen v. Wright*, 468 U.S. 737, 751-752 (1984)), *aff'd*, 230 F.3d 381 (1st Cir. 2000).

**C.      The Complaint Fails To Establish That Either FASORP Or CMU Genuinely Represents Its Members**

Even if Plaintiffs had pleaded a sufficient factual basis to infer that one of their members would have standing to sue as an individual, they have not established that they can stand in the shoes of their members and assert "associational standing" on their behalf.

When individuals create an association by "pool[ing] their interests, activities and capital under a name and form that will identify collective interests," *Camel Hair & Cashmere Inst. of*

*Am., Inc. v. Associated Dry Goods Corp.*, 799 F.2d 6, 11 (1st Cir. 1986), courts may permit the association to sue on the individuals' behalf, because the association "and its members are in every practical sense identical," *NAACP v. State of Ala. ex rel. Patterson*, 357 U.S. 449, 459 (1958).  But as several courts have held, associations lack standing where their members lack sufficient control over the associations to ensure that the associations genuinely represent the members' interests.  *See, e.g.*, *Washington Legal Found.*, 477 F. Supp. 2d at 210 (organization lacked standing where members did not "play any role in selecting [the organization's] leadership, guiding its activities, or financing those activities"); *Package Shop, Inc. v. Anheuser-Busch, Inc.*, 1984 WL 6618, at *41 (D.N.J. Sept. 25, 1984) (members lacked "the control over the organization which would give it standing to sue on their behalf"); *see also Playboy Enterprises, Inc. v. Public Serv. Comm'n of Puerto Rico*, 906 F.2d 25 (1st Cir. 1990) (allowing trade association to sue because it did genuinely represent its members).[7]

That requirement serves important interests, including that it avoids circumvention of the class action procedures of Federal Rule of Civil Procedure 23, which incorporate safeguards to ensure that class plaintiffs and counsel genuinely represent the class.  *See, e.g.*, Fed. R. Civ. P. 23(a)(4), (g).  The Supreme Court has recognized that associational standing, like Rule 23, may provide an appropriate mechanism for groups of like-minded individuals to advance a collective

---

[7]     *Students for Fair Admissions, Inc. v. President & Fellows of Harvard College*, 261 F. Supp. 3d 99 (D. Mass. 2017), is not to the contrary.  There, the court held that a voluntary membership association need not demonstrate that its members exercise genuine control such that the organization can meaningfully be said to represent them.  *Id.* at 106-109.  Harvard respectfully disagrees with that ruling, and in any event, it is distinguishable here for two reasons.  First, Students for Fair Admissions had identified details about its members, *id.* at 105-106; FASORP and CMU have not.  Second, the court there noted that "there may be situations … in which the adequacy of an organization's representativeness is so seriously in doubt that the Court should consider *Hunt*'s indicia-of-membership analysis or some other criteria to further evaluate the issue of associational standing."  *Id.* at 110.  This is just such a case.

litigation aim.  *See Automobile Workers v. Brock*, 477 U.S. 274 (1986).  But the suitability of associational standing in lieu of the class action depends on a showing that the association genuinely represents its members.  Thus, in *Brock*, when the Court considered the government's request to overrule the doctrine of associational standing on the basis that it does not ensure adequate representation as do the requirements of Rule 23, it did not "dismiss out of hand the [government's] concern that associations … will not always be able to represent adequately the interests of all their injured members"; it simply held that such concerns should *generally* be alleviated by the prospect that "[t]he very forces that cause individuals to band together in an association will … provide some guarantee that the association will work to promote their interests." *Id.* at 290.  That assurance does not obtain, however, where an association is *not* formed by individuals "band[ing] together" to protect common interests and where there is no "guarantee that the association will work to promote" its members' interests.  *Id.*  The indicia-of-membership standard ensures that an aggrieved group of individuals can sue through an association rather than pursuing a class action where—but only where—the association genuinely represents its members.

Plaintiffs here allege nothing to suggest that they genuinely represent their members' interests.  As in *Washington Legal Foundation*, there is no basis to believe FASORP's or CMU's members "play any role in selecting [those organizations'] leadership, guiding [their] activities, or financing those activities," 477 F. Supp. 2d at 210.  And as in that case, FASORP and CMU cannot base their standing on people who have simply "'expressed an interest in associating [themselves] with'" the organizations by joining a "mailing list" or "view[ing] themselves as members." *Id.*  Because the Complaint provides no basis for the Court to infer that FASORP and CMU are actually constituted to pursue the common interests of their members, as opposed to

being litigation vehicles using their "membership" lists in an effort to invoke federal jurisdiction, this action should be dismissed for lack of jurisdiction.

\*     \*     \*

As the Supreme Court has admonished, the federal courts' jurisdiction requires more than "important issues and able litigants." *Valley Forge Christian Coll. v. Americans United for Separation of Church & State*, 454 U.S. 464, 489 (1982). The constitutional requirement of standing serves "to assure that the legal questions presented to the court will be resolved, not in the rarified atmosphere of a debating society, but in a concrete factual context conducive to a realistic appreciation of the consequences of judicial action." *Id.* at 472. Especially in cases raising issues of broad public significance, the right to invoke the federal judicial power "must be placed in the hands of those who have a direct stake in the outcome," rather than "in the hands of concerned bystanders, who will use it simply as a vehicle for the vindication of value interests." *Diamond v. Charles*, 476 U.S. 54, 62 (1986) (internal quotation marks omitted). FASORP and CMU are nothing more than "concerned bystanders" who cannot invoke the jurisdiction of the federal courts in an attempt to advance their policy preferences.

## CONCLUSION

The Complaint should be dismissed with prejudice for failure to state a claim or, in the alternative, dismissed for lack of jurisdiction.

Respectfully submitted,

Dated:  February 28, 2019

*/s/ Seth P. Waxman*
Seth P. Waxman (*pro hac vice*)
Paul R.Q. Wolfson (*pro hac vice*)
Daniel Winik (*pro hac vice*)
WILMER CUTLER PICKERING
    HALE AND DORR LLP
1875 Pennsylvania Ave. NW
Washington, DC 20006
Tel.: (202) 663-6800
Fax: (202) 663-6363
seth.waxman@wilmerhale.com

Felicia H. Ellsworth (BBO # 665232)
WILMER CUTLER PICKERING
    HALE AND DORR LLP
60 State Street
Boston, MA 02109
Tel.: (617) 526-6000
Fax: (617) 526-5000
felicia.ellsworth@wilmerhale.com

*Attorneys for Defendant President and Fellows
of Harvard College*

## **CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the CM/ECF system will be sent

electronically to the registered participants as identified on the Notice of Electronic Filing.

*/s/ Seth P. Waxman*
Seth P. Waxman