**THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

_____
)
FACULTY, ALUMNI, AND STUDENTS )
OPPOSED TO RACIAL PREFERENCES; )
and COALITION FOR MERITOCRACY )
AT UNIVERSITIES, )
)
                *Plaintiffs*, )
)
v. )         Civil Action No. 1:18-cv-12105-LTS
)
HARVARD LAW REVIEW )
ASSOCIATION; PRESIDENT AND )
FELLOWS OF HARVARD COLLEGE; )
BETSY DeVOS, in her official )
capacity as U.S. Secretary of Education; )
and UNITED STATES OF AMERICA )
)
                *Defendants*. )
_____)

**DEFENDANT SECRETARY DeVOS'S MEMORANDUM OF**
**REASONS IN SUPPORT OF HER MOTION TO DISMISS**
**PLAINTIFFS' FIRST AMENDED COMPLAINT**

## TABLE OF CONTENTS

INTRODUCTION……………………………………………………………………………...1

BACKGROUND……………………………………………………………………………….2

     I.     Statutory and Regulatory Background…………........................................2

     II.    The Instant Action……………………………………………………………4

LEGAL STANDARD…………………………………………………………………………..5

ARGUMENT…………………………………………………………………………………...5

     I.     This Court Lacks Jurisdiction Because FASORP and CMU have Not
           Sufficiently Pleaded Article III Standing to Sue the
           Department.......................................................…....................................................5

     II.    This Court Lacks Jurisdiction Over the APA Claim
           Against the Department Because FASORP and CMU have an Adequate
           Remedy Against the Alleged Discriminators.......………………………11

     III.   The First Amended Complaint Fails to State a Claim Under Title VI and
           Title IX Because Neither Statute Provides a Cause of Action Against
           the Department to Obtain Judicial Review of Agency Action...............……14

CONCLUSION…………………………………………………………………………..18

# TABLE OF AUTHORITIES

## Cases

*Alexander v. Sandoval,*
    532 U.S. 275 (2001)……………………………………………………….........14

*Allen v. Wright,*
    468 U.S. 737 (1984)……………………………………………………………10

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009)……………………………………………………………..5

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007)……………………………………………………………..5

*Berman v. United States,*
    264 F.3d 16 (1st Cir. 2001)……………………………………………………...8

*Cannon v. Univ. of Chic.,*
    441 U.S. 677 (1979)…………………………………….……….…2, 3, 9, 11, 13, 14

*Clapper v. Amnesty Intern. USA,*
    568 U.S. 398, 409 (2013).......................................................................6, 8, 9

*Cierco v. Mnuchin,*
    857 F.3d 407 (D.C. Cir. 2017)...................................................................10

*Coker v. Sullivan,*
    902 F.2d 84 (D.C. Cir. 1990)....................................................................13

*Council of and for the Blind of Delaware County Valley, Inc. v. Regan,*
    709 F.2d 1521 (D.C. Cir. 1983)……………………………………………….12

*Cousins v. Sec'y of the U.S. Dep't of Transp.,*
    880 F.2d 603 (1st Cir. 1989)…………………………………………….......14

*Dep't of the Army v. Blue Fox, Inc.,*
    525 U.S. 255 (1999)………………………………………………...……..8

*Draper v. Healey,*
    827 F.3d 1 (1st Cir. 2016)……………………………………………….…7, 8

*Frazier v. Fairhaven School Committee,*
    276 F.3d 52 (1st Cir. 2002)……………………………………….........................12, 13

*Friends of the Earth v. Laidlow Envtl. Servs. (TOC), Inc.*,
    528 U.S. 167 (2000)……………………………………………………………………..6

*Garcia v. Vilsack*,
    563 F.3d 519 (D.C. Cir. 2009)....................................................................................13

*Garrett v. City of Hamtramck*,
    503 F.2d 1236 (6th Cir. 1974)……………………………………………...........16

*Gautreaux v. Romney*,
    448 F.2d 731 (7th Cir. 1971)……………………………………………………16, 17

*Gillis v. HHS*,
    759 F.2d 565 (6th Cir. 1985)……………………………………………...........12

*Grimes ex rel. Grimes v. Cavazos*,
    786 F. Supp. 1184 (S.D.N.Y. 1992)……………………………………………...13

*Isaacs v. U.S. Dep't of Educ.*,
    2018WL1257760 (D. Mass. Mar. 12, 2018)……………………………….....12

*Jersey Heights Neighborhood Ass'n v. Glendening*,
    174 F.3d 180 (4th Cir. 1999)....................................................................................11, 16

*Kentucky v. Graham*,
    473 U.S. 159 (1985)…………………………………………………………..1

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
    511 U.S. 375 (1994)………………………………………………………..5

*Lipsett v. University of Puerto Rico*,
    864 F.2d 881 (1st Cir. 1988)………………………………………………...16

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992)……………………………………………………..5, 6, 8

*Marlow v. U.S. Dep't of Educ.*,
    820 F.2d 581 (2d Cir. 1987)………………………………………………12, 14

*NAACP v. Med. Ctr., Inc.*,
    599 F.2d 1247 (3d Cir. 1979)……………………………………………..16

*NAACP v. Sec'y of HUD*,
    817 F.2d 149 (1st Cir. 1987)…………………………………………….9, 11, 14

*National Wrestling Coaches Ass'n v. Dep't of Educ.*,
  366 F.3d 930 (D.C. Cir. 2004)……………………………………………6, 9, 10, 16

*Playboy Enters., Inc. v. Pub. Serv. Comm'n of P.R.*,
  906 F.2d 25 (1st Cir. 1990)…………………………………………….……..7

*Renteria v. Donahue*,
  1996 WL 446905 (10th Cir. 1996)……………………………………...……12, 16

*Rodriguez v. United States*,
  852 F.3d 67 (1st Cir. 2017)........................................................................13

*Salvador v. Bennett*,
  800 F.2d 97, 99 (7th Cir. 1986)……………………………………………..13

*Shannon v. HUD*,
  436 F.2d 809 (3d Cir. 1970)………………………………………………13, 16

*Spokeo, Inc. v. Robins*,
  136 S. Ct. 1540 (2016)……………………………………………………......6, 8

*Steel Co. v. Citizens for a Better Environment*,
  523 U.S. 83 (1998)…………………………………….………………………14

*Stimac v. Barr*,
  10 F.3d 808 (9th Cir. 1993)………………………………………………12

*Summers v. Earth Island Inst.*,
  555 U.S. 488 (2009)……………………………………………..……...7, 8

*Town of Chester v. Laroe Estates, Inc.*,
  137 S. Ct. 1645 (2017)…………………………………………………..6

*Town of Sanford v. United States*,
  140 F.3d 20 (1st Cir. 1998)…………………………………………......11

*Turner v. Sec'y of HUD*,
  449 F.3d 536 (3d Cir. 2006)……………………………………………9, 12

*Transohio Sav. Bank v. Dir., Office of Thrift Supervision*,
  967 F.2d 598 (D.C. Cir. 1992)……………………………………………11

*Union Food & Com. Workers Union Local 751 v. Brown Group, Inc.*,
  517 U.S. 544 (1996)…………………………………………………..7

*Wash. Legal Found. v. Alexander*,
  984 F.2d 483 (D.C. Cir. 1993)……………………………………………………………12

*Women's Equity Action League v. Cavazos*,
  906 F.2d 742 (D.C. Cir. 1990)……………………………………………..........12, 15

**Statutes**

5 U.S.C. § 702…………………………………………………………………………..8

5 U.S.C. § 704…………………………………………………………………………..8

28 U.S.C. § 1331………………………………………………………………………..8

33 U.S.C. § 1365………………………………………………………………………14

42 U.S.C. § 7604………………………………………………………………………14

42 U.S.C. § 2000d *et seq*……………………………………………………………..2, 3

20 U.S.C. § 1681 *et seq*……………………………………………...…………..2, 3

**Rules**

Federal Rule of Civil Procedure 12(b)(1)………………………………………………5

Federal Rule of Civil Procedure 12(b)(6)…………………………………………..5, 14

**Regulations**

34 C.F.R. § 100.3(b)(6)(ii).................................................................................10

34 C.F.R. § 100.6 *et seq*……………………………………………………………...2, 8

34 C.F.R. § 106.71…………………………………………………………………..2

34 C.F.R. § 100.7……………………………………………………………2, 3, 10, 17

34 C.F.R. § 100.8…………………………………………………………………….3

## INTRODUCTION

The law does not permit plaintiffs to convert disagreements with the practices of federally funded educational institutions into lawsuits against the United States Department of Education ("the Department"). But that is precisely what the Plaintiffs in this case, Faculty, Alumni, and Students Opposed to Racial Preferences ("FASORP") and Coalition for Meritocracy at Universities ("CMU"), seek to do in bringing the United States Secretary of Education, Betsy DeVos, in her official capacity, into their discrimination lawsuit against the Harvard Law Review Association and the President and Fellows of Harvard College ("the Harvard defendants").

The claims against the Department[1] should be dismissed for three reasons. First, as a threshold matter, this Court lacks jurisdiction because Plaintiffs have not sufficiently pleaded that they have Article III standing to litigate on behalf of their members. Second, this Court lacks jurisdiction over the Administrative Procedure Act ("APA") claim against the Department because Plaintiffs have an adequate remedy against the alleged discriminators—*i.e.*, the Harvard defendants. Third, the First Amended Complaint fails to state a claim against the Department under Title VI and Title IX because neither statute provides a private cause of action against the Department to obtain judicial review of agency action. Accordingly, this Court should dismiss the claims against the Department.

---

[1] Secretary DeVos is sued in her official capacity. Thus, we refer herein to the government-agency defendant as the Department of Education, or the Department. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985) ("[A]n official-capacity suit is, in all respects other than a name, to be treated as a suit against the entity.").

## BACKGROUND

### I.     Statutory and Regulatory Background

Title VI of the Civil Rights Act of 1964 prohibits discrimination on the basis of race, color, or national origin by recipients of federal financial assistance.  42 U.S.C. § 2000d.  Title IX of the Education Amendments of 1972, which prohibits discrimination based on sex in federally funded education programs and activities, is modeled after and interpreted consistently with Title VI.  20 U.S.C. § 1681; *Cannon v. Univ. of Chi.*, 441 U.S. 677, 694-96 (1979).

There are two mechanisms for enforcing Title VI's and Title IX's nondiscrimination mandates.  First, persons injured by discriminatory practices can bring a cause of action directly against the discriminating educational institution.  *Cannon*, 441 U.S. at 694-96.  Second, both statutes direct agencies that disburse federal funds to educational institutions to effectuate the antidiscrimination provisions.  The agency must first attempt to do so through voluntary means.  If that fails, the agency may initiate enforcement proceedings that could lead to the termination of funding.  *See* 42 U.S.C. § 2000d-1; 20 U.S.C. § 1682.[2]

To this end, the Department has established procedures for conducting compliance reviews and investigating complaints of discrimination, which are carried out by the Office for Civil Rights ("OCR").  *See* 34 C.F.R. § 100.6-100.11 (Title VI procedures); 34 C.F.R. § 106.71 (incorporating Title VI's procedures into Title IX).  Compliance reviews are conducted "from time to time" by the Department, and consist of reviewing the practices of a particular educational institution to determine whether it is complying with, as relevant to this case, Title VI and Title IX.  34 C.F.R. § 100.7(a).  Under the complaint procedure, any person who believes he or she or any class of

---

[2] Such enforcement proceedings could lead, alternatively, to the agency refusing to grant or to continue funding, or to take other action authorized by law.  42 U.S.C. § 2000d-1; 20 U.S.C. § 1682.  We do not address those alternatives here, as they are not part of Plaintiffs' requested relief.

individuals has been subjected to unlawful discrimination may file a written complaint with the Department. 34 C.F.R. § 100.7(b).

In either case—compliance review or written complaint—if the Department investigates and determines that the recipient is not complying with Title VI or Title IX, the Department is required to seek resolution "by informal means whenever possible," before employing statutorily authorized enforcement mechanisms, such as the termination of financial assistance or referral to the U.S. Department of Justice for appropriate enforcement proceedings. 34 C.F.R. §§ 100.7(c)-(d) & 100.8. The Department may not suspend or terminate financial assistance until it has (1) notified the funding recipient of its failure to comply; (2) determined that compliance cannot be secured voluntarily; (3) given an opportunity for a hearing; (4) made an express finding on the record of the failure to comply; and (5) filed a full written report with Congress of the grounds for terminating financial assistance. 34 C.F.R. § 100.8(c). Judicial review is available for termination decisions. 42 U.S.C. § 2000d-2; 20 U.S.C. § 1683.

As the Supreme Court has recognized, the Department's complaint procedure "does not allow the complainant to participate in the investigation or subsequent enforcement proceedings." *Cannon*, 441 U.S. at 706 n.41. "Moreover, even if those proceedings result in a finding of a violation, a resulting voluntary compliance agreement need not include relief for the complainant." *Id.* Finally, although an educational institution has the right to challenge the Department's decision to terminate funding, 42 U.S.C. § 2000d-2; 20 U.S.C. § 1683, an individual complainant has no right of action against the Department with respect to the complaint process or the Department's enforcement activities, *see infra* pages 14-17; *Cannon*, 441 U.S. at 706-07 n.41, 715 (observing that Title VI "appears to have been a compromise aimed at protecting individual rights without subjecting the Government to suits" and noting that suits against federal agencies would be

"disruptive" of agencies' "efforts efficiently to allocate [their] enforcement resources under Title IX").

## II.     The Instant Action

FASORP and CMU are two Texas-based nonprofit associations that "seek to restore meritocracy at American universities by eliminating the use of race and sex preferences." ECF No. 33 at ¶¶ 3, 4, & 36. Defendants are the Harvard Law Review Association, the President and Fellows of Harvard College, Betsy DeVos in her official capacity as U.S. Secretary of Education, and the United States of America.[3]

The First Amended Complaint alleges that the Harvard Law Review engages in unlawful discrimination by using race and sex preferences to select its members, editors, and articles, in violation of Title VI and Title IX. *Id.* at ¶ 46. The First Amended Complaint further alleges that Harvard Law School is violating Titles VI and IX by allowing the law review to engage in discrimination and by itself discriminating on account of race and sex in faculty hiring. *Id.* at ¶¶ 47 & 48. Finally, the First Amended Complaint argues that the Department is violating Titles VI and IX by allowing Harvard University to receive federal funding "while the Harvard Law Review, Harvard Law School, and Harvard University discriminate on account of race and sex." *Id.* at ¶ 56. Plaintiffs seek, among other things, an order (1) invaliding two agency regulations that, according to Plaintiffs, allow universities and law reviews to engage in unlawful discrimination and (2) requiring the Department to terminate federal funding to Harvard University until the law review renounces its allegedly discriminatory processes. *Id.* at ¶¶ 59(g) & (h). The First Amended Complaint is brought under Title VI, Title IX, and the APA. *Id.* at ¶ 58.

---

[3]As of the date of this filing, the United States has not been served with the First Amended Complaint.

## LEGAL STANDARD

The Department moves to dismiss the First Amended Complaint for lack of subject matter jurisdiction or, alternatively, failure to state a claim upon which relief may be granted. *See* Fed. R. Civ. P. 12(b)(1), (b)(6).

To survive a Rule 12(b)(1) motion to dismiss, the party invoking the court's jurisdiction— here, FASORP and CMU—bears the burden of establishing that the court has the requisite subject matter jurisdiction to grant the relief requested. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). The district court "accepts the plaintiff's version of jurisdictionally-significant facts as true and addresses their sufficiency." *Id.* at 363. "In performing this task, the court must credit the plaintiff's well-pleaded factual allegations . . . , draw all reasonable inferences from them in [the plaintiff's favor], and dispose of the challenge accordingly." *Id.*

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Courts assume "that all of the complaint's allegations are true." *Id.* at 555. This assumption, however, does not excuse "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief.'" *Id.* (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## ARGUMENT

### I.    This Court Lacks Jurisdiction Because FASORP and CMU have Not Sufficiently Pleaded Article III Standing to Sue the Department.

A plaintiff seeking to invoke federal jurisdiction must establish all three elements of the "irreducible constitutional minimum of standing." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). Specifically, the plaintiff must show that it has "(1) suffered an injury in fact, (2) that

is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). The plaintiff must establish these elements "for each claim [it] seeks to press and for each form of relief that is sought." *Town of Chester v. Laroe Estates, Inc.*, 137 S. Ct. 1645, 1647 (2017) (citation omitted).

"When," as in this case, "the plaintiff is not himself the object of the government action or inaction he challenges, standing is not precluded, but it is ordinarily substantially more difficult to establish." *Lujan*, 504 U.S. at 562 (internal quotation marks omitted). "In that circumstance, causation and redressability ordinarily hinge on the response of the regulated (or regulable) third party to the government action or inaction—and perhaps on the response of others as well." *Id.* And courts are usually "reluctan[t] to endorse standing on theories that rest on speculation about the decisions of independent actors." *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1150 (2013). "In other words, mere 'unadorned speculation' as to the existence of a relationship between the challenged government action and the third-party conduct 'will not suffice to invoke the federal judicial power.'" *National Wrestling Coaches Ass'n v. Dep't of Educ.*, 366 F.3d 930, 938 (D.C. Cir. 2004) (citing *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 44 (1976)).

FASORP and CMU argue that they have standing as associations bringing suit on behalf of their members. ECF No. 33 at ¶ 26. "An association has standing to bring suit on behalf of its members when its members would otherwise have standing to sue in their own right, the interests at stake are germane to the organization's own purpose, and neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Friends of the Earth, Inc. v. Laidlow Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 181 (2000).

The First Amended Complaint fails to clear even the first hurdle of the associational standing inquiry: not once do FASORP or CMU make "specific allegations establishing that at least one identified member ha[s] suffered or [will] suffer harm." *Summers v. Earth Island Inst.*, 555 U.S. 488, 499 (2009); *see also United Food & Com. Workers Union Local 751 v. Brown Group, Inc.,* 517 U.S. 544, 555 (1996) ("[A]n organization suing as representative [must] include at least one member with standing to present, in his or her own right, the claim . . . pleaded by the association."); *Draper v. Healey*, 827 F.3d 1, 3 (1st Cir. 2016) (Souter, J.) ("[T]he association must, at the very least, identify a member who has suffered the requisite harm."); *Playboy Enters., Inc. v. Pub. Serv. Comm'n of P.R.*, 906 F.2d 25, 34 (1st Cir. 1990) (same).

The First Amended Complaint does not, for instance, identify a single FASORP or CMU member who was denied or imminently will be denied publication, law-review membership, or a teaching position as a result of the allegedly discriminatory processes at issue. In fact, the First Amended Complaint fails to identify any individual FASORP or CMU members *at all*—much less members who have suffered or will suffer any protected injury as a result of the challenged conduct. Plaintiffs instead merely allege that they are "unincorporated nonprofit membership association[s] organized under the laws of Texas[,]" ECF No. 33 at ¶¶ 3 & 4, and then, without identifying any of their individual members, allege that "[a]t least one member of FASORP, and at least one member of CMU" are current students "who intend to apply for membership on the Harvard's [sic] Law Review," faculty members or scholars who have "submitted articles to the Harvard Law Review in the past and . . . intend to continue [doing so] in the future," and job-seekers who have either "applied for entry-level or lateral teaching positions at Harvard Law School and intend to do so again in the future," or who "remain potential candidates for visiting

professorships and lateral faculty appointments without any need to formally apply," *id.* at ¶¶ 38-40, 42.

These allegations do not show that at least one identified member has suffered or will imminently suffer harm; they generalize the activities of Plaintiffs' alleged members, which the Supreme Court has held is insufficient to confer standing. *See Summers*, 555 U.S. at 497 (standing cannot be established by "accepting the organization's self-description of the activities of its members" and determining that "there is a statistical probability that some of those members are threatened with concrete injury"). Nor do Plaintiffs even state that the alleged harm has been inflicted specifically on their members who are members of a protected class under Title VI and Title IX. FASORP's and CMU's generalized allegations thus fall far short of the "heightened specificity [that] is obligatory at the pleading stage . . . where standing is at issue." *Draper*, 827 F.3d at 3.

Even if the First Amended Complaint had identified specific FASORP or CMU members, this Court would still lack jurisdiction because Plaintiffs have inadequately pleaded the injury, traceability, and redressability elements of Article III standing. *See Lujan*, 504 U.S. at 560.

With respect to injury, the law is clear: FASORP and CMU must show that their members suffered an injury "that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Spokeo*, 136 S. Ct. at 1548. In attempting do to so, Plaintiffs allege both current and future injuries. *E.g.*, ECF No. 33 at ¶¶ 33, 38, 42. As to the alleged future injuries, Plaintiffs offer no facts showing that the purported injuries are imminent but instead merely speculate that their members might be harmed at some unidentified future time. *See, e.g.*, ECF No. 33 at ¶¶ 38-40, 42 (alleging that FASORP and CMU members "will suffer 'injury in fact'" or "will face discrimination"). Thus Plaintiffs' allegations of future harm do not satisfy the Supreme Court's

repeated rule that "threatened injury must be *certainly impending* to constitute an injury in fact. . . . [A]llegations of *possible* future injury are not sufficient." *Amnesty Int'l USA*, 568 U.S. at 409 (emphases in original). As to the remaining allegations of injury, despite claiming that the Harvard Law Review has engaged in race- and sex-based discrimination for many years, Plaintiffs have still not alleged that any one of its members have actually suffered a concrete and particularized injury. Indeed, the injuries alleged—preferential article and faculty selection, diluted quality of editing, less-competent judging, diminished prestige of a credential, and suspicion towards law-review membership—are unsupported by any allegations that a member has, for instance, in fact been denied membership on the law review or a faculty position. *See* ECF No. 33 at ¶¶ 29-35, 38-40, 42.

Nor is it clear how any action by the Department contributed to—much less caused—Plaintiffs' purported injuries. The Harvard defendants are the alleged discriminators, not the Department. The Department did not create the law review's allegedly discriminatory processes for choosing its members and articles, or the law school's allegedly discriminatory processes for faculty hiring; it does not participate in the law review's editing; and it is not responsible for the law review's prestige. Thus, any injuries from the alleged discrimination are not traceable to the Department—they are traceable to, if anybody, the independent decisions of the Harvard defendants. And the fact that Harvard is funded in part by federal money does not mean that any injuries caused by the Harvard defendants are likewise caused by the federal government. Where, as here, a purported injury "hinge[s] on the independent choices" of a regulated actor, standing is "substantially more difficult" to establish. *Nat'l Wrestling Coaches Ass'n v. Dep't of Educ.*, 366 F.3d at 938. "In such cases, the plaintiff must offer substantial evidence of a causal relationship

between the government policy and the third-party conduct, leaving little doubt as to causation . . . ." *Cierco v. Mnuchin*, 857 F.3d 407, 418-19 (D.C. Cir. 2017) (internal quotation marks omitted).

Plaintiffs attempt to show that relationship by citing two of the Department's regulations, 34 C.F.R. § 106.3(b) and 34 C.F.R. § 100.3(b)(6)(ii), and arguing that the Department fails to enforce Titles VI and IX as written, and enables the Harvard defendants to unlawfully discriminate based on race and sex. ECF No. 33 ¶¶ 24, 25, 43, 45. But those regulations do not require funding recipients to adopt any particular policies. And Plaintiffs do not argue that the law review or law school even relied on those regulations when they selected the processes at issue. Thus, "the line of causation between the illegal conduct and injury [is] too attenuated" to satisfy the traceability element of Article III standing. *Allen v. Wright*, 468 U.S. 737, 752 (1984).

Despite their failure to demonstrate a sufficient causal nexus between the Department's alleged conduct and Plaintiffs' purported injuries, Plaintiffs ask this Court to "order the Secretary of Education to terminate federal funding to all components of Harvard University" and "hold unlawful and set aside" the aforementioned regulations. ECF No. 33 at ¶ 59(g), (h). Yet Plaintiffs misunderstand a critical point: funding termination cannot be achieved by collateral litigation against the Department. Instead, it requires initiating the multi-step administrative process laid out in Titles VI and IX and their implementing regulations, against the offending institution. *See* 34 C.F.R. § 100.7-11. Plus, even if the Court were to set aside the regulations, the Harvard defendants may still choose to maintain the processes at issue, as neither the regulations nor the Department's enforcement of those regulations required Harvard's processes in the first place. *See National Wrestling Coaches Ass'n*, 366 F.3d at 939-40 (finding a lack of redressability in part because "nothing but speculation suggests that schools would act any differently than they do with the [challenged regulations] in place").

Plaintiffs' failure to meet the requirements of Article III standing is fatal to this Court's jurisdiction. The First Amended Complaint should therefore be dismissed under Rule 12(b)(1).

## II.     This Court Lacks Jurisdiction Over the APA Claim Against the Department Because FASORP and CMU have an Adequate Remedy Against the Alleged Discriminators.

The APA's waiver of sovereign immunity authorizes judicial review of agency action "for which there is no other adequate remedy in court." 5 U.S.C. § 704; *Transohio Sav. Bank v. Dir., Office of Thrift Supervision*, 967 F.2d 598, 607 (D.C. Cir. 1992) ("The APA excludes from its waiver of sovereign immunity . . . claims for which an adequate remedy is available elsewhere.").[4] Because Plaintiffs have an adequate remedy in court against the alleged discriminators—the Harvard defendants—this Court lacks jurisdiction over the APA claims against the Department. *See Town of Sanford v. United States*, 140 F.3d 20, 23 (1st Cir. 1998) (finding a lack of subject matter jurisdiction under the APA because the plaintiff had an adequate alternative remedy).

In *Cannon*, the Supreme Court confirmed an implied private right of action under Titles VI and IX against federal funding recipients who engage in unlawful discrimination. 441 U.S. at 689-717. Since then, courts have routinely held that direct suits alleging discrimination against educational institutions constitute an adequate remedy barring APA suits against the federal government. *National Wrestling Coaches Ass'n*, 366 F.3d at 947 ("[T]he availability of a private cause of action directly against universities that discriminate in violation of Title IX constitutes an adequate remedy that bars appellants' case [against the Department of Education]."); *Jersey Heights Neighborhood Ass'n v. Glendening*, 174 F.3d 180, 191-92 (4th Cir. 1999) (dismissing

---

[4] The federal question statute, 28 U.S.C. § 1331, does not waive the federal government's sovereign immunity. *See Berman v. United States*, 264 F.3d 16, 20 (1st Cir. 2001). Neither do Title VI or Title IX. *See generally Cousins v. U.S. Dep't of Transportation,* 880 F.2d 603, 605-07 (1st Cir. 1989). Thus the APA is the only potential waiver of sovereign immunity that Plaintiffs cite for their claims against the Department. ECF No. 33 at ¶ 58.

APA claim against federal agency in Title VI context because "*Cannon*'s direct remedy against funding recipients is not only 'adequate' but, as the Supreme Court recognized, is preferable to a direct suit against the agency itself"); *Renteria v. Donahue*, 1996 WL 446905 at *2 (10th Cir. 1996) (dismissing APA claim in Title VI and IX context against the Department of Education because plaintiff "has another adequate remedy available in the form of an action against [the funding recipient]"); *Wash. Legal Found. v. Alexander*, 984 F.2d 483, 484, 486 (D.C. Cir. 1993) (dismissing APA claim to compel the Department of Education to enforce Title VI because plaintiffs "have an implied right of action under Title VI against the individual colleges and law schools to redress any discrimination they have allegedly suffered"); *Turner v. Sec'y of HUD*, 449 F.3d 536, 539-41 (3d Cir. 2006) (same); *Stimac v. Barr*, 10 F.3d 808 (9th Cir. 1993) (same); *Marlow v. U.S. Dep't of Educ.*, 820 F.2d 581, 583 n.3 (2d Cir. 1987) (same); *Gillis v. HHS*, 759 F.2d 565, 575-78 (6th Cir. 1985) (same); *Council of and for the Blind of Delaware County Valley, Inc. v. Regan*, 709 F.2d 1521, 1532-33 (D.C. Cir. 1983) (same); *Isaacs v. U.S. Dep't of Educ.*, 2018 WL 1257760 at *5 (D. Mass. Mar. 12, 2018) (same).

The D.C. Circuit's decision in *Women's Equity Action League v. Cavazos* ("*WEAL*") is instructive.  906 F.2d 742 (D.C. Cir. 1990) (Ginsburg, J.).  The plaintiffs in that case did what FASORP and CMU seek to do here:  they sued the Department of Education under Title VI, Title IX, and the APA, arguing that the Department had unlawfully "continued to permit federal funding of racially discriminatory institutions."  *Id.* at 745.  The D.C. Circuit concluded that the APA did not provide grounds for judicial review because the plaintiffs had an adequate remedy against the federally funded schools.  *Id.* at 750-51.  Relying on *Cannon*, the court stated: "Plaintiffs have implied rights of action against federally-funded institutions to redress discrimination proscribed by Titles VI and IX . . . ."  *Id.* at 750.  The court acknowledged that "[s]uits directly against the

discriminating entities may be more arduous, and less effective in providing systemic relief, than continuing judicial oversight of federal government enforcement." *Id.* at 751. Though imperfect, the court explained, "statutory remed[ies] specifically against the discriminating entity [are] adequate and therefore preclusive of a default remedy under the APA." *Id.* at 750-51.

Just as in *WEAL*—and the panoply of other cases cited above—Plaintiffs have an adequate remedy against the allegedly discriminating entity and therefore cannot seek APA relief against the Department. Plaintiffs are indeed already pursuing that remedy in this case by bringing discrimination claims against the Harvard defendants. And that remedy is adequate even though Plaintiffs attempt to challenge two of the Department's regulations. *See Coker v. Sullivan*, 902 F.2d 84, 90 n.5 (D.C. Cir. 1990) ("[T]he APA . . . bar[s] suits where a plaintiff's *injury* may be remedied in another action, even if that remedy would have no effect upon the challenged agency action.") (internal quotation marks omitted); *Garcia v. Vilsack*, 563 F.3d 519, 522 (D.C. Cir. 2009) ("[T]he alternative remedy need not provide relief identical to relief under the APA, so long as it offers relief of the 'same genre.'").[5]

_____

[5]Further, even if Plaintiffs' APA claim were not precluded under the adequate-alternative remedy provision, their substantive challenge to the validity of the Title VI and Title IX regulations—first promulgated in 1973 and 1975, respectively—would still be subject to dismissal under the APA's six-year statute of limitations. *See* 28 U.S.C. § 2401(a) ("[E]very civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues."). Under *Rodriguez v. United States*, there are two circumstances in which "a substantive challenge to a regulation alleging that an agency exceeded its constitutional or statutory authority" may be pursued after the six-year statute of limitations has run. 852 F.3d 67, 67 (1st Cir. 2017). First, "when the challenge arises in responses to application of the regulation to the challenger," and second, "after the agency denies a plaintiff's petition to amend or rescind a regulation." *Id.* Here, there are no allegations that the regulations have been applied to Plaintiffs or that the Department has denied any petition to amend or rescind the regulations filed by Plaintiffs. Thus, the six-year statute of limitations applies and Plaintiffs' regulatory challenge is time barred.

Plaintiffs' implied right of action against the Harvard defendants constitutes an adequate alternative remedy that precludes relief under the APA. Thus the claims against the Department should be dismissed for lack of jurisdiction.

### III.    The First Amended Complaint Fails to State a Claim Under Title VI and Title IX Because Neither Statute Provides a Private Cause of Action Against the Department to Obtain Judicial Review of Agency Action.

Setting aside the critical jurisdictional defects in the First Amended Complaint, the allegations against the Department should be dismissed because they fail to state a claim under Titles VI and IX. *See* Fed. R. Civ. P. 12(b)(6). Specifically, neither Title VI nor Title IX creates an implied cause of action against the Department to obtain judicial review of agency action. *See Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 92 (1998) (issue of whether a statute creates a cause of action goes to the merits and not jurisdiction).

"[P]rivate rights of action to enforce federal law must be created by Congress." *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001). "The judicial task is to interpret the statute Congress has passed to determine whether it displays an intent to create not just a private right but also a private remedy." *Id.* Congress knows how to authorize suits directly against a federal agency when it wants to do so. *See, e.g.*, 33 U.S.C. § 1365(a)(2) (1976) (Federal Water Pollution Control Amendments of 1972); 42 U.S.C. § 7604 (Supp. V 1981) (Clean Air Act Amendments of 1970). Thus, courts are reluctant to infer that Congress intended to authorize such suits where, as here, it did not "say so explicitly in the statute." *NAACP*, 817 F.2d at 153.

Although the Supreme Court in *Cannon* acknowledged an implied private right of action against federal funding recipients under Titles VI and IX, the Court expressed skepticism that a similar private right of action exists against the federal government. *See Cannon*, 441 U.S. at 706–07 n.41, 715 (observing that Title IX "appears to have been a compromise aimed at protecting

individual rights without subjecting the Government to suits" and noting that suits against federal agencies would be "disruptive" of agencies' "efforts efficiently to allocate [their] enforcement resources under Title IX"); *see also WEAL*, 906 F.2d at 750 (explaining that *Cannon* "found strong support in [the] legislative history" of Titles VI and IX for "suit[s] against a discriminatory fund recipient to terminate the offending discrimination[,] . . . but resistance on the part of lawmakers toward . . . suit[s] against the government to terminate federal funding").

Relying on *Cannon*, the First Circuit held that Section 504 of the Rehabilitation Act— which, like Title IX, was modeled after Title VI—does not create an implied cause of action against the federal government to challenge agency action. *Cousins v. U.S. Dep't of Transportation,* 880 F.2d 603, 605-07 (1st Cir. 1989); *see also Marlow*, 820 F.2d at 583 (same). The court stated: "[I]n light of the existence of the APA, it rarely makes sense to find that a substantive statute creates an 'implied private right of action' against the federal government for relief from unlawful regulatory conduct." *Cousins*, 880 F.2d at 606. Interpreting a statute to imply such a right, the court explained, makes more sense "elsewhere in the law, when a plaintiff seeks to enforce a federal statute against a *non*-federal person." *Id.* Thus, the court rejected the idea that the Rehabilitation Act "tacitly creates a rather unusual legal animal called a 'private right of action against the federal government.'" *Id.* at 608; *accord NAACP*, 817 F.2d at 152-53 (citing *Cannon* and holding that Title VIII of the Fair Housing Act does not provide an implied right of action against funding agencies).

Given their similarity, Section 504 of the Rehabilitation Act, Title VI, and Title IX are frequently construed interchangeably. *E.g.*, *Marlow*, 820 F.2d at 582. Thus, as the First Circuit did with respect to Section 504, this Court should decline to recognize a private cause of action

against the federal government under Titles VI and IX.[6]  This would be consistent with the

approach taken by every other post-*Cannon* federal appellate court to decide the issue.  *See Nat'l*

*Wrestling Coaches Ass'n*, 366 F.3d at 946 ("[T]here is no legislation pursuant to which agency

actions under Title IX are made reviewable by statute.");  *Jersey Heights Neighborhood Ass'n*, 174

F.3d at 191 (refusing to imply a private right of action against the federal government under Title

VI and stating: "We do not think Congress intended . . . individuals to circumvent [the]

administrative scheme [for federal agencies to secure voluntary compliance or to terminate funds]

through direct litigation against federal agencies.");  *WEAL*, 906 F.2d at 748-50 (finding "no

legislative intent" in Title IX to create a private right of action against the federal funding agency);

*Salvador v. Bennett*, 800 F.2d 97, 99 (7th Cir. 1986) ("Title VI follows this model:  . . . a

complainant told that the agency will do nothing . . . may get 'review' not by suing the adjudicator

but by pursuing the supposed offender.");  *NAACP v. Med. Ctr., Inc.*, 599 F.2d 1247, 1254 n.27

(3d Cir. 1979) (same);  *Renteria*, 1996 WL 446905 at *2 (same);  *Grimes ex rel. Grimes v. Cavazos*,

786 F. Supp. 1184, 1191 (S.D.N.Y. 1992) (same).

　　　To be sure, as noted in *WEAL*, a handful of pre-*Cannon* decisions allowed situation-specific

civil rights suits to proceed against a federal agency for funding a particular activity or entity.  906

F.2d at 749 (citing  *Garrett v. City of Hamtramck*, 503 F.2d 1236, 1246-48 (6th Cir. 1974);

*Gautreaux v. Romney*, 448 F.2d 731, 739-40 (7th Cir. 1971);  *Shannon v. HUD*, 436 F.2d 809, 818-

20 (3d Cir. 1970)).  But those cases were decided before *Cannon* "curtailed the availability of suits

---

[6]In at least two cases, the First Circuit limited Title IX's implied right of action solely to the funding recipient.  In *Frazier v. Fairhaven School Committee*, the court rejected the plaintiff's Title IX claims against individual school officials on the ground that the statute's implied right of action "extends only to claims against the educational institution itself."  276 F.3d 52, 65 (1st Cir. 2002).  Similarly, in *Lipsett v. University of Puerto Rico*, the First Circuit stated: "In implying a cause of action under Title IX, the Supreme Court has considered only actions against the educational institution itself."  864 F.2d 881, 901 (1st Cir. 1988) (citing *Cannon*, 441 U.S. at 677).

directly against federal enforcement authorities for tardigrade administration of antidiscrimination prescriptions," *WEAL*, 906 F.2d at 749, and involve unique allegations not presented here. *See Garrett*, 503 F.2d at 1241, 1246 (allegations that agency allowed programs to continue when the agency "must have known," through plaintiffs' administrative complaint and agency's subsequent investigation, that the programs were discriminatory); *Gautreaux*, 448 F.2d at 740 (allegations that the agency acquiesced or actively participated in discriminatory practices); *Shannon*, 436 F.2d at 817, 820 (allegations that agency used discriminatory procedures to approve funding programs). By contrast, the First Amended Complaint in this case lacks any allegation that Plaintiffs filed a complaint with OCR about the Harvard Law Review's or Harvard Law School's practices, much less that OCR investigated those practices, found a failure to comply with Title VI or Title IX, and did not seek an appropriate remedy.

Allowing the Title VI and Title IX claims to proceed against the Department would repudiate sound precedent from every level of the federal judiciary. Congress did not intend these civil rights statutes to create private causes of action against federal agencies. *See Cannon*, 441 U.S. at 704-05. Rather, challenges to the validity of agency regulations are accomplished through the APA, *see Cousins*, 880 F.2d at 605,[7] and termination of funding is accomplished through Titles VI's and IX's express enforcement procedures, *see* 34 C.F.R. § 100.7(b)-(c). Plaintiffs instead seek to circumvent the administrative enforcement procedures by bringing civil rights claims against the Department in federal court, but those claims fail for the reasons discussed above.

---

[7]Though the APA is the proper mechanism for challenging the Department's regulations, in the circumstances, Plaintiffs' APA claim cannot go forward because Plaintiffs have an adequate remedy against the funding recipient and the claim is time barred. *See* Section II.

## CONCLUSION

For the foregoing reasons, the Department respectfully requests that this Court dismiss the claims against it for lack of subject matter jurisdiction or, in the alternative, for failure to state a claim upon which relief can be granted.

Dated: February 28, 2019          Respectfully submitted,

JOSEPH H. HUNT
Assistant Attorney General

MARCIA BERMAN
Assistant Branch Director
Civil Division

*/s/ Cristen C. Handley*
CRISTEN C. HANDLEY
(MO Bar # 69114)
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, DC 20005
Tel.: (202) 305-2677
Fax: (202) 616-8460
E-mail: cristen.handley@usdoj.gov

*Counsel for Secretary DeVos*

## CERTIFICATE OF SERVICE

I certify that a true copy of the above document was served upon Plaintiffs' counsel by the Electronic Case Filing system on February 28, 2019.

*/s/ Cristen C. Handley*
CRISTEN C. HANDLEY
(MO Bar # 69114)