## THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

———————————————————————— )
FACULTY, ALUMNI, AND STUDENTS )
OPPOSED TO RACIAL PREFERENCES; )
and COALITION FOR MERITOCRACY )
AT UNIVERSITIES, )
 )
            *Plaintiffs*, )
 )
v. )        Civil Action No. 1:18-cv-12105-LTS
 )
HARVARD LAW REVIEW )
ASSOCIATION; PRESIDENT AND )
FELLOWS OF HARVARD COLLEGE; )
BETSY DeVOS, in her official )
capacity as U.S. Secretary of Education; )
and UNITED STATES OF AMERICA )
 )
            *Defendants*. )
————————————————————————)

## DEFENDANT SECRETARY DeVOS'S REPLY MEMORANDUM OF REASONS IN SUPPORT OF HER MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

## TABLE OF CONTENTS

INTRODUCTION…………………………………………………………………………...1

ARGUMENT…………………………………………………………………………...2

     I.      Plaintiffs Lack Article III Standing for Their Claims
            Against the Department................................................................................2

     II.     Plaintiffs' APA Claim Fails because they have
            an Adequate Remedy Against the Alleged Discriminators.......……..........5

     III.    *Ex Parte Young* Does Not Apply to this Case..........…...........................…8

CONCLUSION…………………………………………………………………………...9

## TABLE OF AUTHORITIES

<u>**Cases**</u>

*Allen v. Wright*,
 468 U.S. 737 (1984)……………………………………………………….………4

*American Road & Transp. Builders Ass'n v. EPA*,
 865 F. Supp. 2d 72 (D.D.C. 2012)...................................................................................8

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009)……………………………………………………...…3, 5

*Clapper v. Amnesty Intern. USA*,
 568 U.S. 398, 409 (2013).................................................................................................4

*Cierco v. Mnuchin*,
 857 F.3d 407 (D.C. Cir. 2017)........................................................................................3

*Coker v. Sullivan*,
 902 F.2d 84 (D.C. Cir. 1990)......................................................................................7, 8

*EEOC v. Peabody Western Coal Co.*,
 610 F.3d 1070 (9th Cir. 2010).........................................................................................8

*Gallo Cattle Co. v. USDA*,
 159 F.3d 1194 (9th Cir. 2006).........................................................................................5

*Garcia v. Vilsack*,
 563 F.3d 519 (D.C. Cir. 2009).........................................................................................7

*Larson v. Domestic & Foreign Commerce Corp.*,
 337 U.S. 682 (1949).........................................................................................................8

*Lujan v. Defenders of Wildlife*,
 504 U.S. 555 (1992)………………………………………………….........3

*Muscogee (Creek) Nation Division of Housing v. HUD*,
 819 F. Supp. 2d. 1225 (E.D. Okla. 2011), *aff'd* 698 F.3d 1276 (10th Cir. 2012)...........8

*National Wrestling Coaches Ass'n v. Dep't of Educ.*,
 366 F.3d 930 (D.C. Cir. 2004)…………………………………………...............4, 6

*Northeastern Florida Chapter of Associated General
Contractors of America v. City of Jacksonville*,
 508 U.S. 656 (1993).........................................................................................................2

*Perry Capital LLC v. Mnuchin*,
   864 F.3d 591 (D.C. Cir. 2017)....................................................................................5

*Philadelphia Co. v. Stimson*,
   223 U.S. 605 (1912).....................................................................................................8

*Simon v. Eastern Kentucky Welfare Rights Organization*,
   426 U.S. 26 (1978).......................................................................................................4

*Spokeo, Inc. v. Robins*,
   136 S. Ct. 1540 (2016)…………………………………………………….........2

*Summers v. Earth Island Inst.*,
   555 U.S. 488 (2009).....................................................................................................2

*Town of Sanford v. United States*,
   140 F.3d 20 (1st Cir. 1998)…………………………………………...........5

*Verizon Maryland, Inc. v. Public Service Commission*,
   535 U.S. 635 (2002).....................................................................................................8

*Women's Equity Action League v. Cavazos*,
   906 F.2d 742 (D.C. Cir. 1990)…………………………………………….................6

*Wilder v. Virginia Hosp. Ass'n*,
   496 U.S. 498 (1990).....................................................................................................8

**Statutes**

5 U.S.C. § 704…………………………………………………………………….5, 6

28 U.S.C. § 2401(a)............................................................................................................5

**Federal Rules of Civil Procedure**

FRCP 12(b)(1).....................................................................................................................2, 5

FRCP 12(b)(6).....................................................................................................................5

FRCP 24..............................................................................................................................6

## INTRODUCTION

In their opposition to the Department's[1] motion to dismiss the First Amended Complaint, Plaintiffs concede that they "could secure an injunction that stops the Harvard defendants from using race and sex preferences if they dropped their APA claims against the Secretary and the United States." ECF No. 50 at 13.  Such an injunction would, of course, remedy Plaintiffs' alleged injury: "that at least one of their members . . . will encounter discrimination on account of race and sex" by the Harvard defendants.  *Id.* at 5.  For that reason and others, the Court should dismiss Plaintiffs' claims against the Department of Education.[2]

First, Plaintiffs' sweeping view of standing—that anybody who might someday be discriminated against by a federal funding recipient can levy broad regulatory challenges against the funding agency—ignores Article III's requirements that injuries be concrete, fairly traceable to the challenged conduct, and redressable.  Second, Plaintiffs have failed to demonstrate why their causes of action against the Harvard defendants do not provide an adequate alternative remedy precluding their APA claim against the Department.  And third, Plaintiffs' reliance on *Ex Parte Young* is misguided, as that doctrine has been replaced by the APA for suits against federal officers. Accordingly, this Court should dismiss the claims against the Department.

---

[1] As noted in our opening brief, ECF No. 47 at 8 n.2, Secretary DeVos is sued in her official capacity and, therefore, the government-defendant is referred to herein as the Department of Education, or the Department. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985) ("[A]n official-capacity suit is, in all respects other than a name, to be treated as a suit against the entity.").

[2] The United States did not join the Department's Motion to Dismiss the Amended Complaint, ECF No. 46, because the United States was not served with the Amended Complaint until after the Department filed its motion.  The United States now joins in the Department's motion and adopts all arguments made in support thereof.

## ARGUMENT

I.     **Plaintiffs Lack Article III Standing for Their Claims Against the Department.**

Plaintiffs have not established that they have Article III standing to bring their APA claim on behalf of their purported members against the Department.  The generalized allegations in the First Amended Complaint fail to identify FASORP or CMU members who have suffered or will suffer a protected injury as a result of the challenged agency conduct.  *See Summers v. Earth Island Inst.*, 555 U.S. 488, 499 (2009) (Article III requires "specific allegations establishing that at least one identified member ha[s] suffered or [will] suffer harm[.]").  And, even if Plaintiffs had adequately pled an injury-in-fact, they would still lack standing because the First Amended Complaint fails to plausibly allege that Plaintiffs' injuries are fairly traceable to the Department's alleged misconduct, or that a favorable ruling against the Department would redress Plaintiffs' purported injuries.  The Court should therefore dismiss the claims against the Department under Rule 12(b)(1) for lack of Article III standing.

Plaintiffs contend that *Northeastern Florida Chapter of Associated General Contractors of America v. City of Jacksonville*, 508 U.S. 656 (1993), controls this case and shows that their members have suffered an injury-in-fact sufficient to confer Article III standing.  ECF No. 50 at 1-2.  But that case says nothing about the standing requirements for a regulatory challenge under the APA.  Rather, *Northeastern Florida* sets forth a rule for the injury required to confer standing in equal protection cases.  508 U.S. at 667 ("The 'injury-in-fact' *in an equal protection case of this variety* is the denial of equal treatment resulting from the imposition of the barrier . . . .") (emphasis added).  Accordingly, this Court need not follow *Northeastern Florida*.  It should instead apply the ordinary rule requiring Plaintiffs to identify an injury that is "concrete and particularized and actual or imminent, not conjectural or hypothetical." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547

(2016).  For the reasons discussed in the Department's opening brief, ECF No. 47 at 13-14, Plaintiffs have failed to meet this requirement and therefore lack Article III standing.

Plaintiffs are also wrong to suggest that the Amended Complaint satisfies the traceability and redressability elements with respect to the claims against the Department.  Plaintiffs attempt to satisfy both elements with the same conclusory allegation that the Harvard defendants "would stop using race and sex preferences if the Secretary interpreted Title VI and Title IX as written and terminated federal funding of entities that practice affirmative action."  ECF No. 50 at 9, 10.  The Department does not dispute Plaintiffs' repeated point that well-pleaded factual allegations are accepted as true at the motion-to-dismiss stage.  But Plaintiffs' allegations here amount to no more than pure speculation, unadorned by any well-pleaded facts supporting a reasonable inference that the Department is responsible for the alleged discrimination.  *See, e.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Plaintiffs continue to ignore the axiom standing is "substantially more difficult to establish" where, as here, Plaintiffs are not "the object of the government action or in action [they] challenge[.]"  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 562 (1992).  "In such cases, the plaintiff must offer substantial evidence of a causal relationship between the government policy and the third-party conduct, leaving little doubt as to causation[.]"  *Cierco v. Mnuchin*, 857 F.3d 407, 418-19 (D.C. Cir. 2017) (internal quotation marks omitted).  In lieu of meeting that heightened standard, Plaintiffs merely offer conclusory assertions—unaccompanied by supportive facts—that the Department's regulations caused the Harvard defendants' discriminatory acts.  *See* ECF No. 50 at 9.  Yet Plaintiffs acknowledge that the regulations do not require the Harvard defendants to adopt any particular policies, ECF No. 50 at 10, and the First Amended Complaint does not allege

that the Harvard defendants relied on or even considered those regulations when adopting the relevant policies at issue.

Even accepting Plaintiffs' theory that the regulations—which pre-date Harvard's policies by decades according to the timeline in the Amended Complaint—encouraged the Harvard defendants to adopt the policies at issue, all that underlies Plaintiffs' redressability argument is abstract theory about the internal choices that Harvard may make in response to a hypothetical threat of funding termination. The Supreme Court has repeatedly found such speculation about the behavior of regulated entities insufficient to confer standing. In *Simon v. Eastern Kentucky Welfare Rights Organization*, for instance, the Court held that the plaintiffs lacked standing to challenge an IRS Revenue Ruling that gave tax preferences to certain non-profit hospitals. 426 U.S. 26, 28 (1976). The Court found that, even if the plaintiffs received a favorable ruling on their claims against the IRS, that ruling would not redress the alleged injury—denial of access to certain hospital services—because "it is just as plausible that the hospitals to which the plaintiffs may apply for service would elect to forego favorable tax treatment." *Id.*; *see also Allen v. Wright*, 468 U.S. 737, 758 (1984) (stating that it is "entirely speculative . . . whether withdrawal of a tax exemption from any particular school would lead the school to change its policies); *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1150 (2013) (describing courts as "reluctan[t] to endorse standing on theories that rest on speculation about the decisions of independent actors"); *National Wrestling Coaches Ass'n v. Dep't of Educ.*, 366 F.3d 930, 938 (D.C. Cir. 2004) ("[M]ere 'unadorned speculation' as to the existence of a relationship between the challenged government action and the third-party conduct 'will not suffice to invoke the federal judicial power.'") (citing *Simon*, 426 U.S. at 44).

Here, as in those cases, Plaintiffs' allegations as to redressability are limited to Plaintiffs' bald predictions about the Harvard defendants' independent decisions.  While Plaintiffs suppose that a decision in their favor against the Department would cause the Harvard defendants to alter or abandon their policies (without providing a factual basis for the prediction), it is just as plausible that the Harvard defendants would do no such thing.  And Plaintiffs are not entitled to judicial review based on a mere possibility that their injuries may be redressed if they prevail against the Department.  *See Iqbal*, 556 U.S. at 678 (discussing the difference between plausibility and possibility).  The Amended Complaint should therefore be dismissed against the Department for lack of Article III standing.

## II.  Plaintiffs' APA Claim Fails because they have an Adequate Remedy Against the Alleged Discriminators.

Plaintiffs' response raises issues about sovereign immunity[3] that need not be resolved because, even if sovereign immunity is waived in this case and jurisdiction is proper under Rule 12(b)(1), Plaintiffs' APA claim fails under Rule 12(b)(6) because they have an adequate remedy against the Harvard defendants.  *See* 5 U.S.C. § 704. [4]

---

[3]To the Department's knowledge, the First Circuit has not addressed the issue whether section 704 of the APA limits the APA's waiver of sovereign immunity.  Other circuits are split.  *Compare Perry Capital LLC v. Mnuchin*, 864 F.3d 591, 620-21 (D.C. Cir. 2017) ("[T]he finality requirement and adequate remedy bar of § 704 determine whether there is a cause of action under the APA, not whether there is federal subject matter jurisdiction."), *with Gallo Cattle Co. v. USDA*, 159 F.3d 1194, 1198 (9th Cir. 2006) ("[T]he APA's waiver of sovereign immunity contains several limitations," one of which is "'final agency action' for which there is no other adequate remedy in a court.").  The First Circuit in *Town of Sanford v. United States* indicated that section 704 is jurisdictional, although the court did not reach a sovereign immunity specifically.  140 F.3d 20, 23 (1st Cir. 1998) (affirming the dismissal of an APA claim for lack of subject matter jurisdiction due to the adequate-remedy provision in section 704).

[4]Additionally, as the Department argued in its opening brief, the APA claim fails for the independent reason that it was not raised within the six-year statute of limitations set forth in 28 U.S.C. § 2401(a).  ECF No. 47 at 19 n.5.  Plaintiffs offer no defense to this argument in their response.

Plaintiffs do not dispute that they have a cause of action for discrimination under Title VI and Title IX against the Harvard defendants.  And they admit that, if they prevail on that claim, Plaintiffs "could secure an injunction that stops the Harvard defendants from using race and sex preferences if they dropped their APA claims against the Secretary and the United States."  ECF No. 50 at 13.  Because such an injunction would redress Plaintiffs' alleged injury—"that at least one of their members . . . will encounter discrimination on account of race and sex" by the Harvard defendants—Plaintiffs have an alternative remedy barring their APA claim against the Department.  *Id.* at 5; 5 U.S.C. § 704.

Plaintiffs argue that their remedy against the Harvard defendants is inadequate because, in Plaintiffs' view, they cannot ask this Court to set aside the Department's regulations if the Department is not a party to this case.  ECF No. 50 at 13.  This argument does not avoid dismissal of the APA claim for three key reasons.  First, Plaintiffs identify no authority for their point that agency regulations are immune from challenges when the agency itself has not been sued.  In fact, the Federal Rules suggest the opposite, as they give courts discretion to deny an agency's motion to intervene in cases where a party's claim is based on the agency's regulations.  *See* Fed. R. Civ. P. 24(b)(2) ("On timely motion, the court may permit a federal or state governmental office or agency to intervene if a party's claim or defense is based on . . . any regulation[.]").

Second, in its opening brief, the Department cited over a dozen cases from various appellate and district courts demonstrating that the adequate-remedy provision bars APA claims against an agency due to the availability of a cause of action against the allegedly discriminating educational institution.  ECF No. 47 at 17-19 (citing, among others, *National Wrestling Coaches Ass'n*, 366 F.3d 930 and *WEAL*, 906 F.2d 742 (D.C. Cir. 1990)).  Plaintiffs attempt to distinguish those cases on the ground that the plaintiffs there were not challenging the validity of agency

regulations.  But Plaintiffs cite no authority showing that such distinction prevents this Court from relying on those cases.  The plaintiffs in each of the other cases challenged agency action or inaction related to the agency's enforcement or interpretation of a law.  *See* ECF No. 47 at 17-19. That is precisely the issue Plaintiffs raise here in their claims against the Department.  And Plaintiffs offer no precedent or reason why the APA's adequate-remedy limitation varies based on the type of agency action at issue in a given case.

Third, even assuming Plaintiffs cannot challenge the validity of the Department's regulations without the Department as a party to this case, Plaintiffs still have an adequate remedy against the Harvard defendants because a ruling against the Harvard defendants would fully redress Plaintiffs' alleged injuries.  Plaintiffs say that their remedy against the Harvard defendants is inadequate because it may not lead to systemic changes in the Department's enforcement of Title VI and Title IX.  ECF No. 50 at 13.  Plaintiffs are mistaken.  The law does not require a remedy against the alleged discriminator to be identical to, or even as effective as, relief available against the federal government under the APA.  *See Garcia v. Vilsack*, 563 F.3d 519, 522, 525 (D.C. Cir. 2009).  "As a result, the availability of actions against individuals may be adequate even if such actions . . . may be more arduous, and less effective in providing systemic relief[.]"  *Id.* at 525. Thus, while Plaintiffs would prefer this lawsuit to impact "the use of race and sex preferences at every University in [the] United States," a ruling against the Harvard defendants would adequately remedy the only injury that Plaintiffs allege:  that their members will encounter discrimination when they are subjected to the Harvard defendants' policies.  ECF No. 50 at 5.  And the APA does not provide for review of agency action "where a plaintiff's injury may be remedied in another action, even if that remedy would have no effect upon the challenged agency action."  *Coker v.*

*Sullivan*, 902 F.2d 84, 90 n.5 (D.C. Cir. 1990).  Accordingly, Plaintiffs have an adequate alternative remedy, and their APA claim against the Department should be dismissed.

**III.    *Ex Parte Young* Does Not Apply to this Case.**

Plaintiffs are wrong that *Ex Parte Young* provides a mechanism for review of federal action independent of the APA.  *Ex Parte Young* provides a basis for prospective relief requiring state officers to obey the law.  *E.g.*, *Verizon Maryland, Inc. v. Public Service Commission*, 535 U.S. 635, 645 (2002).  Although courts once applied *Ex Parte Young* in cases involving federal officers, *see Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682 (1949), "since 1976 federal courts have looked to section 702 of the [APA] to service the purposes of the *Ex Parte Young* fiction in suits against federal officers."  *EEOC v. Peabody Western Coal Co.*, 610 F.3d 1070, 1085 (9th Cir. 2010) (stating that section 702 of the APA "replaced the *Ex Parte Young* fiction as the doctrinal basis for a claim for prospective relief . . . against federal officers"); *see also Muscogee (Creek) Nation Division of Housing v. HUD*, 819 F. Supp. 2d 1225, 1223 (E.D. Okla. 2011), *aff'd* 698 F.3d 1276 (10th Cir. 2012) (concluding that "the *Ex Parte Young* doctrine does not offer a waiver of sovereign immunity" in a case seeking prospective relief against a federal agency); *American Road & Transp. Builders Ass'n v. EPA*, 865 F. Supp. 2d 72, 83 (D.D.C. 2012) (same).  And, where the APA provides the basis for a cause of action against a federal agency, so too must the APA's limitations—such as the adequate-alternative remedy provision—govern the court's review.  *See Peabody Western Coal Co.*, 610 F.3d at 1086.

Plaintiffs do not cite any case in which a court relied on *Ex Parte Young* to review federal action in lieu of the APA.  They cite *Philadelphia Co. v. Stimson*, 223 U.S. 605 (1912), which pre-dates section 702 of the APA by over a half-century, and *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498 (1990), which involved a section 1983 claim against state officials.  Neither case involved the

APA nor explained why *Ex Parte Young* would allow a Plaintiff to circumvent the APA's waiver of sovereign immunity and permit a separate cause of action against the federal government. Accordingly, Plaintiffs' invocation of *Ex Parte Young* lacks merit.

## CONCLUSION

For the foregoing reasons, the Department respectfully requests that this Court dismiss the claims against it for lack of subject matter jurisdiction or, in the alternative, for failure to state a claim upon which relief can be granted.

Dated: April 18, 2019                         Respectfully submitted,

JOSEPH H. HUNT
Assistant Attorney General

MARCIA BERMAN
Assistant Branch Director
Civil Division

*/s/ Cristen C. Handley*
CRISTEN C. HANDLEY
(MO Bar # 69114)
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, DC 20005
Tel.:  (202) 305-2677
Fax:  (202) 616-8460
E-mail:  cristen.handley@usdoj.gov

*Counsel for Secretary DeVos*

## CERTIFICATE OF SERVICE

I certify that a true copy of the above document was served upon Plaintiffs' counsel by the Electronic Case Filing system on April 18, 2019.

*/s/ Cristen C. Handley*
CRISTEN C. HANDLEY
(MO Bar # 69114)